**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MALLINCKRODT PLC, | ) | Case No. 20-12522 (BLS) |
| | ) | |
|     Reorganized Debtor. | ) | |
| | ) | |
| OPIOID MASTER DISBURSEMENT TRUST II, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 22-50433 (BLS) |
| | ) | |
| COVIDIEN UNLIMITED COMPANY (formerly known as Covidien Ltd. and Covidien plc), COVIDIEN GROUP HOLDINGS LTD. (formerly known as Covidien Ltd.), COVIDIEN INTERNATIONAL FINANCE S.A., COVIDIEN GROUP S.A.R.L., and DOE DEFENDANTS 1-500, | ) ) ) ) ) ) ) ) | |
| | ) | |
|     Defendants. | ) | **Re: Adv. Docket No. 201** |
| | ) | |

**MEDIATOR LAWRENCE F. STENGEL'S
REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS**

This Report and Recommendation concerns a discovery dispute between Plaintiff the

Opioid Master Disbursement Trust II ("Trust") and Defendants Covidien Unlimited Co.,

Covidien Group Holdings Ltd., Covidien International Finance S.A., and Covidien Group S.à

r.l.'s (collectively, "Covidien").  The Trust has propounded two sets of discovery requests

relevant to its claims for fraudulent transfer and reimbursement, indemnification, and

contribution and resulting damages arising from the 2013 spinoff ("Spinoff") of Mallinckrodt plc

and other debtors-in-possession in the chapter 11 cases (collectively, "Debtors" or

"Mallinckrodt") from the corporate enterprise of Covidien.  Covidien has largely declined to engage in further review of documents potentially responsive to the Trust's document requests on the basis the Trust's proposed search terms are insufficiently tailored to the Trust's claims and theory of damages and the cost and time associated with undertaking additional reviews for privilege and relevance is out of proportion to the needs of the case, considering the volume of documents already in the Trust's possession, the cost and delay associated with the review, and what Covidien anticipates will be a minimal number of relevant documents.  The Court assigned me to mediate the dispute in its December 8, 2025 Order, and I issue this Report and Recommendation pursuant to that instruction and authority.  *See* (Adv. Dkt. No 201).

The parties have thoroughly briefed the issues, and I have conferred with them on four separate occasions.  Having fully considered the matter, I recommend the Court order the Trust to modify its proposed search terms for the First and Third Set of Requests as described below and order Covidien to utilize the modified search terms to engage in further review of materials within its custody, possession, and control to identify documents responsive to the Requests and produce those documents which are relevant and not subject to privilege.

### FACTUAL AND PROCEDURAL BACKGROUND

The Trust is a Delaware statutory trust formed under the Fourth Amended Plan of Reorganization ("Plan") of Mallinckrodt.  Under the Plan, the Trust received, among other assets, certain claims and causes of action of the Debtors, including claims and causes of action arising under chapter 5 of the Bankruptcy Code, which are defined in the Plan as Assigned Medtronic Claims. The Trust has sole authority to pursue the Assigned Medtronic Claims, and the claims and causes of action being asserted in this proceeding are Assigned Medtronic Claims. The Trust is charged with, among other things, investigating and prosecuting the claims against

Covidien for the benefit of the Debtors' creditors, which include the many victims of the nationwide opioid epidemic.

On June 15, 2014, Medtronic, Inc. entered into an agreement to acquire Covidien. On January 26, 2015, Covidien and Medtronic, Inc. became wholly owned subsidiaries of the newly formed Medtronic plc ("Medtronic") as part of a cash and stock transaction valued at approximately $50 billion.

## I.     The Bankruptcy Action

Mallinckrodt filed for bankruptcy on October 12, 2020; at the time, it had been sued in more than 3,000 opioid-related cases.  Prior to confirmation of the Plan, the Official Committee of Opioid Related Claimants ("OCC") conducted due diligence of the relative strength of the Assigned Medtronic Claims.  As part of this effort, in June 2021, the OCC and Medtronic agreed to 25 search terms ("OCC Terms") and 14 "ad hoc" document requests ("Ad Hoc Requests"), pursuant to which Covidien produced approximately 70,000 documents.  (Adv. Dkt. No. 163 at 1-2).

On March 2, 2022, the Court confirmed the Debtors' Plan, which provided for the establishment of the Trust. The Trust was formed on June 16, 2022, when the Plan became effective.  Mallinckrodt and the Trust subsequently entered into a cooperation agreement, whereby they negotiated the production of approximately 1.3 million documents based on approximately 200 search terms.  The documents produced pertain to Mallinckrodt and the operation of the pharmaceuticals business.  (Adv. Dkt. No. 163 at 2).

## II.    The Adversary Proceeding

On October 22, 2022, the Trust commenced the underlying Adversary Proceeding to avoid and recover alleged fraudulent transfers associated with the Spinoff, including:

approximately $867 million in cash transfers; Covidien's retention of approximately $721 million in proceeds from Mallinckrodt's issuance of senior unsecured notes; Mallinckrodt's assumption of hundreds of millions of dollars of tax liability previously held by Covidien; Mallinckrodt's assumption of indemnification obligations to Covidien; and the value of the enterprise that was transferred away from the Debtors as a result of the Spinoff.

In support of these claims, the Trust alleges as follows. By at least 2010, Covidien became aware that it was facing opioid liability that would dwarf the value of the company. *See, e.g.,* (Adv. Dkt. No. 61 at 79, ¶ 189). Covidien's financial advisor warned of the potential for billions in liability arising out of the pharmaceutical business and in fact other pharmaceutical companies were facing hundreds of millions of dollars in fines for the same or substantially similar conduct. *See, e.g., id.* at 81, ¶ 193. The DEA labeled Covidien the "kingpin" of the opioid cartel and opened an investigation into Covidien's opioid-related practices. *See, e.g., id.* at 87, ¶ 205. In November 2010, Covidien's board "[r]ecommended pursuing 5 strategic buyers who would not require an audit, financing and would not dig." *Id.* at 102, ¶ 249. "In March 2011, Covidien's board noted that it would only approve a sale to a prospective buyer if 'they assume liabilities.'" *Id.* "While Covidien was trying to sell Mallinckrodt and contemplated the spinoff as an alternative, Covidien extracted substantial sums of cash out of Mallinckrodt, purportedly as part of 'cash management' and funding arrangements. Covidien siphoned $867 million in a series of transfers from Mallinckrodt and did not provide reasonably equivalent value in exchange." *Id.* at 103, ¶ 254. "For example, (a) in fiscal year 2010, Mallinckrodt transferred a net total of $505 million in cash to Covidien; (b) in fiscal year 2011, Mallinckrodt transferred a net total of $258 million in cash to Covidien; and (c) in fiscal year 2012, Mallinckrodt transferred a net total of $104 million to Covidien." *Id.* The Trust also

asserts a claim for reimbursement, indemnification, and contribution, which seeks to hold Covidien liable both for the costs of the Mallinckrodt bankruptcy and for the costs incurred by Mallinckrodt in defending opioid-related litigation.

Covidien moved to dismiss the Adversary Complaint, which motion the Court granted in part and denied in part.[1]  The Court upheld the actual fraudulent transfer claims as sufficiently pled and allowed the claim for reimbursement, indemnification, and contribution to go forward. The Trust filed an Amended Complaint on February 8, 2024.

On July 10, 2024, prior to the start of discovery, Covidien moved for summary judgment on the securities safe harbor defense under 11 U.S.C. § 546(e). On August 20, 2025, the Court granted summary judgment on Count I as to Covidien Group S.à r.l., one of the four defendants and an indirect subsidiary of Covidien Unlimited Co., and denied Covidien's motion in all other respects.

### III.    Discovery in the Adversary Proceeding

In June 2024, the parties exchanged their Rule 26 initial disclosures and, in July 2024, they each served a first request for production of documents.  In response to Covidien's document requests, the Trust produced 1,252,051 documents.  In response to the Trust's document requests ("First Set of Requests"), Covidien utilized the OCC Terms to produce 24,956 documents.  Covidien applied the OCC Terms to all custodians identified in the parties' Rule 26 disclosures.  The parties thereafter began their negotiations regarding search terms.

On October 4, 2024, the Trust provided Covidien with a list of 224 proposed search terms, which terms yielded approximately 840,000 hits spread across 1.4 million documents.

---

[1] The Court dismissed the claims for "constructive" fraudulent transfer and breach of fiduciary duty.

The Trust then proposed a revised list of 155 terms, which resulted in 190,000 hits spread across approximately 401,000 documents ("Proposed Merits Terms").  The Trust takes the position that the Proposed Merits Terms are reasonable considering its pleading has largely withstood Rule 12(b)(6) review and seeks tens of billions of dollars in alleged fraudulent transfers.  Covidien takes the position that the Proposed Merits Terms are overbroad and additional document discovery is out of proportion to the needs of the case.

The parties' subsequent efforts to meet and confer regarding the search terms culminated in a discovery conference before the Court on March 24, 2025, at which conference the Court directed the parties to pursue the present mediation.

On August 20, 2025, while Covidien was producing responsive documents on a rolling basis and the parties continued to negotiate their dispute, the Trust served a set of fifteen document requests on Covidien related to damages and solvency issues ("Third Set of Requests").  To assist in responding to the Third Set of Requests, the Trust provided Covidien with a list of 16 proposed search terms, which terms yielded 36,050 hits spread across 85,055 documents ("Proposed Damages Terms") (referred to collectively with the Proposed Merits Terms as "Proposed Terms").  The parties' respective positions on the Proposed Damages Terms are the same as their positions on the Proposed Merits Terms.  The parties ultimately agreed to the present mediation on December 1, 2025.

Under the current scheduling order, fact discovery must be completed by March 31, 2026, expert discovery must be completed by July 31, 2026, dispositive motions are due by September 18, 2026, and a final pre-trial conference is scheduled for December 2026.

The subject of this Report and Recommendation is whether Covidien is obligated to search for and review additional documents, beyond what it has already produced, and whether

the Proposed Terms are sufficiently tailored to the claims in dispute.  I find Covidien should be required to engage in further review of documents potentially responsive to the First and Third Sets of Requests, and in furtherance of satisfying that obligation should utilize the Proposed Terms, as modified in accordance with this recommendation.  I therefore also recommend the Court amend the scheduling order to extend the current deadlines.

## LEGAL STANDARD

The Federal Rules of Civil Procedure control here.  Fed. R. Bankr. P. 26.  Federal Rule of Civil Procedure 26(b)(1) states that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "[P]roportionality is on a par with relevance when negotiating and formulating preservation and discovery plans, propounding and responding to discovery requests, staging and scheduling productions, and negotiating and adjudicating discovery disputes."  *The Sedona Principles, Third Ed.: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* ("Sedona Principles"), 19 Sedona Conf. J. 1, 66 (2018).  "The proportionality standard is a balancing test that requires consideration of more than just "'the amount in controversy.'"  *Id.* at 66 (citing 2015 Advisory Comm. Note to Rule 26(b)(1) ("It also is important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors.").  Additionally, a court must limit discovery if the information "sought is unreasonably cumulative

or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The party seeking discovery bears the burden of showing the relevance of the requested information. *See Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) ("A party moving to compel bears the initial burden of showing the relevance of the requested information"); *Brewer v. Berks Cty. Sheriff*, No. 5:13-cv-5763, 2015 WL 13620425, at *2 (E.D. Pa. Oct. 5, 2015) ("The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence") (citation omitted)). If the requesting party satisfies its burden, "[t]he burden then shifts to the party resisting discovery to justify withholding it." *Morrison*, 203 F.R.D. at 196.[2]

## DISCUSSION

### I.   The Discovery Dispute

Covidien contends the additional discovery the Trust seeks is untimely and unduly broad. Covidien asserts generally that the Adversary Proceeding has been pending over three years, relates to a Spinoff that was completed well over ten years ago, and implicates corporate officers who suffer from advancing age, fading memories, and failing health. Covidien also asserts the scope of discovery is cabined to the bases of and rationale for its Board of Directors's decision to

---

[2] During Mediation, the Default Standard for Discovery Including Discovery of Electronically Stored Information for the United States District Court for the District of Delaware was referenced as setting forth a presumptive limit to the number of search terms the requesting party may ask the producing party to use. The operative Scheduling Order states that the parties are expected to conduct discovery consistent with Local Rule of the United States Bankruptcy Court for the District of Delaware 7026-1 and Federal Rules of Civil Procedure 26 through 37. (Adv. Dkt. No. 192 at 2). The Local Rules of the United States Bankruptcy Court for the District of Delaware have no corollary Default Standard for Discovery and no presumptive limit regarding search terms. *Cf.* Del. Bankr. L.R. 7026-3. However, both Courts' Local Rules mirror the expectation of proportionality as set forth in Federal Rule of Civil Procedure 26.

enter into the Spinoff; the Trust long ago received the non-privileged documentation relating to the Board's rationale; and the search and review required to locate any remaining relevant documentation is out of proportion to the needs of the case.  *See* (Adv. Dkt. No. 163).

The Trust contends the Adversary Proceeding seeks to recover tens of billions of dollars in fraudulent transfers, as well as prejudgment interest and punitive damages in connection with those transfers, and damages not less than $575 million for the reimbursement, indemnification, and contribution claim; and under these circumstances requiring Covidien to review approximately 436,000 documents is perforce reasonable and in proportion to the needs of the case.

Pertinent to the issue of relevancy and the scope of discovery, the following claims survived Covidien's motion to dismiss and are at issue:

(I)      Avoidance of the Spinoff and Component Transfers;

(II)     Avoidance of the Putative Indemnity Obligations;

(III)    Avoidance of Tax Liability;

(IV)    Avoidance of Cash Transfers;

(V)     Reimbursement, Indemnification, or Contribution;

(VI)    Equitable Subordination;

(VII)   Disallowance of Claims under Section 502(d) of the Bankruptcy Code; and

(VIII)  Disallowance of Contingent Indemnity Claims under Section 502(e)(1)(B) of the Bankruptcy Code.

*See* (Adv. Dkt. No. 57).

To prevail on the fraudulent transfer claims, the Trust must prove essentially two elements: (1) that a transfer was made of the debtor's property (2) with the intent to hinder,

delay, or defraud the debtor's creditors.  (Adv. Dkt. No. 57 at 46) (citing 6. Del. C. § 1304(a)(1)).

The second element can be proven through circumstantial evidence known as "badges of fraud."

Notably, the Court determined the Trust has sufficiently pled the following seven badges of fraud

and thereby raised "the necessary inference of fraudulent intent on the part of Covidien's board":

- The transfer was to or for the benefit of an insider;

- The company retained possession or control of the property after the transfer;

- The company was sued or threatened with suit before the transfer;

- The transfer was of all or substantially all of the assets;

- The debtor was insolvent at the time of the transfer or rendered insolvent as a result of the transfer;

- There was a lack of reasonably equivalent value provided for the transfer; and

- The company removed or concealed assets.

(Adv. Dkt. No. 57 at 50, 52-64).

In closing, the Court observed that "[w]hile the badges of fraud provide a basic rubric,

courts examine the totality of the circumstances to determine whether fraudulent intent exists."

*Id.* at 64 (citation omitted).  To that end, "[i]f the 'natural consequence' of a debtor's actions is

that its creditors were hindered, delayed or defrauded, a court is more likely to find that an

intentional fraudulent transfer occurred."  *Id.* (citations omitted).

To prevail on the claim for Reimbursement, Indemnification, or Contribution, which is an

alter ego theory of liability, the Trust "[m]ust essentially demonstrate that in all aspects of the

business, the two corporations actually functioned as a single entity and should be treated as

such." (Adv. Dkt. No. 57 at 78) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485

(3d Cir. 2001)).  "This demonstration is made through a two-part test. Plaintiffs must show (1)

that the companies operated as a single economic unit; and (2) the presence of an overall element of injustice or unfairness." *Id.* As the Court observed, whether a corporation and its shareholders existed as a single economic entity is assessed through the following set of seven factors: "(1) gross undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; [and] (7) whether the corporation is merely a facade." *Id.* (quoting *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470-71 (D. Del. 2010)). Additionally, under Delaware law, "the fraud or injustice that must be demonstrated in order to pierce a corporate veil must 'be found in the defendants' use of the corporate form." *Id.* at 78-79 (quoting *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 473 (D. Del. 2010)). The Court found that the Trust has raised sufficient allegations to support its claim at the pleading stage. *Id.* at 79.

> With respect to damages, the Trust prays for the following relief, in relevant part:
>
> (B) avoiding all transfers of assets or property made in connection with, or as a result of, the Spinoff in accordance with section 544(b) of the Bankruptcy Code, including, without limitation, avoidance of (1) the transfer of Covidien and its direct and indirect subsidiaries and (2) the transfer of the Note Proceeds to Covidien;
>
> (C) avoiding the incurrence of the Tax Liability and the incurrence of the Putative Indemnity Obligations in accordance with section 544(b) of the Bankruptcy Code;
>
> (D) avoiding each of the Cash Transfers in accordance with section 544(b) of the Bankruptcy Code;
>
> (E) in accordance with section 550 of the Bankruptcy Code, awarding recovery by the Trust of the value of all assets or property transferred in connection with, or as a result of, the Spinoff, including, without limitation, the value of (1) Covidien and its direct and indirect subsidiaries, (2) the Note Proceeds, and (3) all payments that Mallinckrodt made on account of the avoided Tax Liability;
>
> (F) in accordance with section 550 of the Bankruptcy Code, awarding recovery by the Trust of the value of all avoided Cash Transfers;

11

(G) awarding compensatory damages in favor of the Trust for all damages sustained as a result of transfers or obligations avoided, or any of Defendants' wrongdoing, in an amount to be determined at trial;

(I) awarding in favor of the Trust reimbursement, indemnification, or contribution by or from Defendants for (1) payments of indemnity and defense costs made by one or more of the Debtors on or before the Petition Date in connection with, or as a result of, opioid-related subpoenas, investigations, litigation, judgments, and settlements, and (2) payments made by one or more of the Debtors to satisfy (i) all professional fees and costs, allowed administrative expenses, quarterly fees, and other costs related to the Bankruptcy Case and (ii) obligations under the Debtors' confirmed Plan, in an amount to be determined at trial.

(Adv. Dkt. No. 61 at 140-142).

This is the framework within which I review whether the Trust has carried its burden to show the relevance of the materials requested, the sufficiency of the document production to date as it relates to the pending claims and theories of damages, and Covidien's challenges based on overbreadth and lack of proportionality. But first, I address Covidien's argument regarding timing.

### A.  Timing of the Trust's Document Requests

Under the Scheduling Order entered May 28, 2024, document production was set to be substantially complete by October 31, 2024. (Adv. Dkt. No. 88). Covidien contends the Trust waited until July 2024 to serve the First Set of Requests, to which Covidien served responses and objections on August 9, 2024, and made additional rolling productions through October 31, 2024; and the Trust waited until August 20, 2025 to serve the Third Set of Requests. Covidien asserts that while the Court later extended the deadline to complete fact depositions, it has not extended the deadline for completing document discovery. Nevertheless, the fact remains that the Trust propounded the First Set of Requests before the deadline.

12

But even if the Trust had propounded the requests after October 31, 2024, as it did with the Third Set, the controlling Scheduling Order contemplated substantial—not absolute—completeness. The operative Scheduling Order does not include a deadline for document production, but it specifies that "[a]ll discovery in this proceeding shall be initiated so that it will be completed on or before July 31, 2026," and the period specific to fact discovery remains open through March 31, 2026.   (Adv. Dkt. No. 192 at 2).

During mediation, the parties appeared to be in general agreement about the necessity and inevitability of asking the Court to extend the remaining pretrial deadlines and I find that such extensions are appropriate. I understand Covidien's expressed concern regarding the potential impact of delay on the availability of its key witnesses, which concern I address below, but I do not find that such factor alone warrants depriving the Trust of relevant documents potentially critical to proving its theories of liability and damages. Apart from the concern of ailing witnesses, Covidien has not argued that extending the deadline for completion of document discovery will cause it prejudice. For the reasons stated below, I find that the relevance of the requested documents and the balance of the Rule 26(b) considerations weigh in favor of extending fact discovery so as to allow Covidien additional time to search for, review, and produce documents responsive to the First and Third Sets of Requests. Accordingly, I recommend that the deadline for completion of document discovery be extended commensurate with the extensions of the remaining deadlines.

**B. Proportionality**

    1.  <u>Scope of Permissible Discovery</u>

To resolve the parties' disagreement regarding proportionality, I must first determine the scope of permissible discovery in the Adversary Proceeding. I find the scope is broader than

13

simply the bases of and rationale for the Board's decision to enter into the Spinoff, as Covidien

suggests.  *See* (Adv. Dkt. No. 163 at 1).  While the rationale behind the Spinoff is clearly

relevant, it is not the only evidence by which the Trust can prove its claims.  As the Court

explained in its Opinion on the motion to dismiss, "while allegations regarding the state of mind

of the board would certainly satisfy a plaintiff's requirement to plead intent with specificity, it is

not the only acceptable approach."  (Adv. Dkt. No. 57 at 50).  The Trust can prove the requisite

intent by marshaling evidence of specific badges of fraud, seven of which are identified and

adequately pled in the Amended Complaint.  The scope of discovery is certainly broad enough to

include materials relevant to these badges of fraud.

Moreover, such badges are not exclusive, and the Court may "consider factors other than

the traditional badges of fraud in an analysis of fraudulent intent."  (Adv. Dkt. No. 57 at 51)

(quoting *In re Tribune Co.*, 464 B.R. 126, 162 (Bankr. D. Del. 2011)).  In considering the totality

of the circumstances set forth in the initial pleading, the Court summarized its review of the

Trust's allegations as follows:

> I find that it is reasonable to conclude that the hindrance of Debtors' creditors was
> substantially certain to occur following the Spinoff, considering the totality of the
> circumstances. The Amended Complaint alleges that at the very same time that
> the opioid epidemic was at its peak, when the company's competitors and
> customers were being sued and fined, and when Mallinckrodt itself was the target
> of investigations, Covidien was both increasing Mallinckrodt's potential opioid
> liability by doubling down on sales and marketing strategies that it knew were
> problematic while at the same time siphoning off the profits from these increased
> sales, increasing Mallinckrodt's debt, and extricating itself from liability before
> the inevitable day of reckoning was upon them. That these actions would hinder,
> delay, or defraud Mallinckrodt's creditors can come as no surprise.

*Id.* at 64-65.  The scope of discovery is thus also broad enough to encompass materials relevant

to the "totality of circumstances," as alleged in the Amended Complaint.

With respect to the claim for Reimbursement, Indemnification, or Contribution, Covidien moved to dismiss on the basis the Trust had not alleged facts sufficient to support disregarding corporate separateness.  The Court found:

> First, [the Trust] has included pages of allegations that support the conclusion that Covidien and Mallinckrodt functioned as a single entity, to the point that Mallinckrodt lacked the ability prior to the Spinoff to stand on its own. The Trust asserts that Mallinckrodt and Covidien "maintained an organizational structure that consolidated the design, manufacturing, marketing, sales, promotion, supply, reporting, compliance, administration, and cash management functions of the entire Covidien enterprise into a single, unified economic entity."  Several of the Third Circuit's "single economic entity" factors are present throughout the Amended Complaint. The Trust alleges a failure to observe corporate formalities, including that Mallinckrodt did not maintain its own board of directors and that its corporate records were so deficient that Covidien had to generate information during the Spinoff in order for Mallinckrodt to satisfy its public reporting requirements. The Trust has alleged that "Covidien siphoned huge sums of cash out of Mallinckrodt, in the aggregate amount of $867 million" and that Covidien siphoned these funds at a time when Mallinckrodt was undercapitalized and insolvent.  I am satisfied that the first prong of the alter ego test is met.
>
> The Trust has also sufficiently alleged that an overall element of unfairness and injustice is present. As discussed at length above, the Trust has alleged facts that suggest that Covidien both oversaw and actively participated in Mallinckrodt's aggressive opioid sales and marketing campaign, shared in the massive profits, and then structured a spinoff that allowed Covidien to shield itself from liability and left Mallinckrodt without the resources to pay those who were harmed. Moreover, the facts allege that Covidien used the corporate form to perpetrate this injustice. Specifically, the Trust alleges that Mallinckrodt's lack of corporate separateness (particularly its lack of a board or separate leadership team) enabled Covidien to make all of the decisions regarding the Spinoff and prevented Mallinckrodt from having the opportunity to negotiate on its own behalf or otherwise protect its own interests at all prior to the Spinoff, resulting in a transaction that favored only Covidien to the detriment of Mallinckrodt and its creditors. I am satisfied that the second prong of the alter ego test is met.

(Adv. Dkt. No. 57 at 79-80).  Therefore, the scope of discovery also reaches to whether Covidien and Mallinckrodt operated as a single economic unit and whether there exists the presence of an overall element of injustice or unfairness in Covidien's use of the corporate form.

15

Similarly, the scope of discovery is broad enough to include requests for materials related to the issue of Mallinckrodt's solvency and the measure of damages associated with the allegations of liability.

As for the temporal scope of discovery, the Trust asserts that material dated, prepared, created, generated, transmitted, or received between June 29, 2007—the date Covidien's parent corporation spun off Covidien—and June 28, 2013—the date of the Spinoff—is discoverable. During mediation, Covidien asserted that its Board first contemplated the Spinoff in June 2010 and therefore materials generated prior to that time are not discoverable. However, counsel for Covidien also represented that Covidien has not withheld on relevance grounds documents or materials that pre-date June 2010. I find the claim for Reimbursement, Indemnification, or Contribution alone implicates and makes relevant the materials that pre-date the Board's contemplation of the Spinoff, and therefore the date range for relevant materials is June 29, 2007 through June 28, 2013.

### 2.  The First Set of Requests

The First Set of Requests, attached hereto as **Exhibit A**, numbers 50. The Scheduling Order does not impose on the parties a limit to the number of document requests they can propound, nor do the Federal Rules, and, other than referring to the requests as too broad, Covidien has not taken specific issue with the number of requests or with the documents they seek.

Indeed, review of the First Set of Requests reflects they seek materials that fall squarely within the scope of discovery, e.g., documents: "relating to the Opioid Business," "concerning actions taken by the Pre-Spin Covidien Board," "that identify, refer to, or relate to the Cash Transfers," "concerning any investigation or subpoenas related to the Opioids Business,"

"concerning Project Jameson," "relating to all options . . . to address past, present, or future Opioid liabilities," "concerning the Separation Agreement."  *Id.* at ¶¶ 3, 4, 10 14, 18, 39.  Rather, this discovery dispute centers on whether Covidien should be required to engage in further review for and production of responsive documents.

Covidien's resistance to engaging in further document discovery is premised in large part on the argument that the Trust has already obtained all documents in Mallinckrodt's possession relating to the pharmaceuticals business and the Spinoff, constituting approximately 1.3 million documents, and has obtained all documents responsive to the OCC Terms, constituting approximately 70,000 documents.  Covidien asserts that any relevant documents not yet produced are negligible in volume, and the amount of time and cost associated with reviewing the approximately 400,000 documents on which the Proposed Merits Terms hit is out of proportion to the needs of the case, particularly considering how few relevant documents Covidien's efforts would yield and its concerns regarding additional delay.

The Trust contends the balance of Rule 26(b)(1) factors weighs in its favor, considering in particular part the importance of the issues at stake—the fallout of the opioid epidemic and the use of damages to fund opioid abatement and to otherwise compensate victims; the tens of billions of dollars in controversy; Covidien's resources; and the importance of the requested discovery as it relates to the Trust's burden to prove fraudulent intent and its alter ego theory.

I find the First Set of Requests seek information that is relevant to and in proportion with the needs of the case and, as explained below, limitations can be added to ensure the requests do not solicit information unreasonably cumulative or duplicative of what the Trust has already received.  Although I am sympathetic to Covidien's concerns regarding the potential impact on

witnesses caused by extending document discovery, this factor does not outweigh the benefit of relevant, possibly critical, documents that could facilitate resolution of this dispute on its merits.

### 3.   The Third Set of Requests

The Third Set of Requests, attached hereto as **Exhibit B**, numbers 16.  Again, other than contending the document requests are too broad and out of proportion to the needs of the case, Covidien does not take issue with the number of requests or with the documents they seek. As with the First Set of Requests, the Third Set of Requests seek materials that fall squarely within the scope of discovery.   For example, at some point during document discovery, Covidien produced a Valuation Report prepared for it by Ernst & Young LLP ("EY LLP"), which report references a January 1, 2010 engagement letter between EY LLP and Tyco Healthcare Group LP (d/b/a Covidien).[3]  The Valuation Report states "[t]he valuation analysis was performed in connection with the contemplated spin . . . of its pharmaceutical and imaging businesses (the Business or Mallinckrodt)."[4]  The Third Set of Requests asks for the engagement letter, all statements of work associated with the engagement letter, EY LLP deliverables under the engagement letter, "[a]ll business plans, future performance estimates, and budgets provided to EY LLP in connection with the Valuation Report," and "[t]he strategic plan identified in the Valuation Report . . . ."  **Exhibit B** at 12, ¶¶ 1-5.  The Third Set of Requests also asks for "[a]ll documents relating to contingent liabilities provided by [Covidien] to EY LLP," the Board of Directors materials related to the Valuation Report.  *Id.* at ¶¶ 6-7.  And the Third Set of Requests asks for the federal tax returns for Covidien for fiscal years 2010 through 2013 and any related

---

[3] The title page of the Valuation Report bears Bates Number COV-00000963.
[4]  *See* COV-00000964.

correspondence with or rulings by the IRS related to the Spinoff, among other highly relevant document.  *See id.*

As with the First Set of Requests, I find the Third Set of Requests seeks information that is relevant to and in proportion with the needs of the case.

4.   Whether the Requested Discovery is Unreasonably Cumulative or Duplicative

Even if otherwise allowed by Rule 26, the Court must limit the frequency or extent of discovery if it is unreasonably cumulative or duplicative.  Fed. R. Civ. P. 26(b)(2)(C)(i).  In the underlying bankruptcy action, Medtronic and the OCC negotiated the OCC Terms, attached hereto as **Exhibit C**, to assist in the production of documents during pre-suit discovery, pursuant to Federal Rule of Bankruptcy Procedure 2004.  Covidien contends that with this production, the Trust already has all relevant Board materials, analyses and memoranda concerning opioid-related liabilities, solvency reports, and documents containing terms for opioids near terms associated with legal or regulatory action, among other materials.  The Trust contends that the OCC Terms do not capture most of the documents the First Set of Requests targets, such as documents relating to upstreaming of cash, Spinoff bonus payments, cash transfer documents, strategies to address opioid liabilities, tax returns, post-Spinoff restrictions on Mallinckrodt, indemnification negotiations and claims, and documents pertaining to affirmative defenses and the value of Covidien.

As an initial matter, I note that Rule 26(b)(2)(C)(i) limits *unreasonably* cumulative or duplicative discovery.  In other words, the Rule contemplates and indeed permits cumulative or duplicative discovery that is reasonable, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit.  Given the balance of these interests and the indisputable relevancy of the requested materials, I find that some degree of overlap is both reasonable and permissible here.

I also find that pre-suit discovery pursuant to Rule 2004 is not intended to serve in an adversary proceeding as a substitute for the traditional discovery mechanisms provided for in the Federal Rules of Civil Procedure.  The purpose of a Rule 2004 examination is to "'discover the nature and extent of the bankruptcy estate' in order to distribute debtor's assets for the benefit of its creditors." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (citation omitted).  Rule 2004 provides:

> [t]he examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In . . . a reorganization case under chapter 11 of the Code . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

*Id.* (quoting Fed. R. Bankr. P. 2004(b)).  While "[l]egitimate goals of Rule 2004 examinations include 'discovering assets, examining transactions, and determining whether wrongdoing has occurred,'" *id.* (citations omitted), a Rule 2004 examination "should not be confused with discovery or a discovery deposition," *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 268 (3d Cir. 2013) (quoting *In re J & R Trucking, Inc.,* 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010)).

The scope of Rule 2004 is "broad and unfettered," and essentially permits an "inquisition" or "fishing expedition"; and thereby serves an entirely different purpose than traditional discovery, "which narrowly focuses on the issues germane to the dispute." *In re Millennium Lab Holdings II, LLC*, 562 B.R. at 626 (citations omitted).  "Indeed, a Rule

2004 examination is generally not available once an adversary proceeding or contested matter has been commenced; at that point, discovery is made pursuant to the Federal Rules of Bankruptcy Procedure." *Id.* The Federal Rules of Bankruptcy Procedure in turn provide that the discovery provisions set forth in the Federal Rules of Civil Procedure govern adversary proceedings. *See, e.g.,* Fed. R. Bankr. P. 7026. Thus, it is clear that a Rule 2004 examination is no substitute for the discovery gathering mechanisms as set forth in the Federal Rules of Civil Procedure once an adversary proceeding is underway.

Moreover, while review of the OCC Terms as compared to the Proposed Terms reflects some degree of overlap with respect to certain words and combination of terms, the overlap is not as significant as Covidien suggests, especially when considered against the broad scope of discoverable material as discussed herein. In other words, the overlap in and of itself does not serve as a basis on which to preclude the Trust from engaging in additional, otherwise permissible document discovery; and I find that such overlap can in fact be greatly reduced through modification of the Proposed Terms, as discussed in more detail below. Accordingly, Covidien has not shown that the First and Third Set of Requests seek document discovery that is unreasonably cumulative or duplicative of the productions already in the Trust's possession.

In sum, I find that the scope of discovery in the Adversary Proceeding is broad enough to encompass more than just the materials relating to the pharmaceuticals business and the Spinoff and the documents upon which the OCC Terms hit. The Trust has also carried its burden of demonstrating entitlement to document discovery beyond what it has already received. The importance of the issues at stake cannot seriously be contested. The amount in controversy, the parties' relative access to relevant information, and the parties' respective resources also weigh heavily in favor of ordering additional production. Covidien's concerns regarding delay and

expense simply do not outweigh these factors, particularly in consideration of the relevance of the requested materials, and therefore I find that Covidien has not satisfied its burden to justify withholding responsive documents.

As addressed below, I recommend modifications to the Proposed Terms, which modifications I believe will both narrow the terms in accordance with governing case law and lessen the delay and expense associated with engaging in further document review and production.

## II.     The Search Terms

"To be adequate under the Federal Rules, a search in response to a discovery request must be reasonable." *Prasad v. George Washington University*, 323 F.R.D. 88, 93 (D.D.C. 2017) (citing *Moore v. Napolitano*, 723 F. Supp. 2d 167, 173 (D.D.C. 2010) ("[A] party is obligated to make a reasonable effort to search for and produce documents responsive to the opposing party's document requests. 'Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances . . .'") (quoting Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment)). "The standard for evaluating discovery is reasonableness, not perfection." *Agerbrink v. Model Service LLC*, No. 14 Civ. 7841, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017) (collecting cases).

Specific to the issue of electronically stored information ("ESI") and search terms, the Sedona Conference has developed a series of guiding tenets, the Sedona Principles, which describe best practices. *See supra The Sedona Principles*, 19 Sedona Conf. J. 1. The Sedona Principles instruct that "a responding party is best situated to preserve, search, and produce its own ESI. [This] [p]rinciple . . . is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction

from the court or opposing counsel . . . unless a specific deficiency is shown in a party's production." *Id.* at 118. *Accord Prasad*, 323 F.R.D. at 94 ("[I]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility") (citation omitted). For requesting parties, "it is clear that discovery requests for electronically stored information should be as specific as possible." *Lawson v. Love's Travel Stops & Country Stores, Inc.*, Civil No. 1:17-CV-1266, 2019 WL 7102450, at *1-2 (M.D. Pa. Dec. 23, 2019). "This duty of specificity applies to the formulation of search terms to be used in ESI searches. These search terms should be tailored to the needs of the case and designed to capture that which is relevant without burdening parties with excessive, irrelevant data." *Id.* at *2. And, "[f]or responding parties, there is a corresponding duty to ensure the accuracy of searches by cooperating in sampling techniques that allow the parties to revise their searches to locate that which is relevant, protect that which is privileged, and exclude that which does not pertain to the parties' dispute." *Id.*

Here, Covidien used only the OCC Terms to search for documents responsive to the First Set of Requests, and the Trust has shown that this limited approach to searching for and collecting ESI is deficient within the context of the Adversary Proceeding. The OCC Terms were negotiated for the purpose of the Rule 2004 process, which process is no substitute for Rule 26 discovery; and while there is overlap between the scope of a Rule 2004 examination—to discover the nature and extent of the bankruptcy estate—and the scope of discovery in this proceeding, they are indisputably not one and the same. Additionally, Covidien has not yet engaged in a review of documents responsive to the Third Set of Requests. Accordingly, the Trust has successfully challenged Covidien's "right to evaluate unilaterally and select the

procedures, methodologies, and technologies appropriate for preserving and producing its own ESI." *The Sedona Principles*, 19 Sedona Conf. J. 1, 126.

That being said, many of the Proposed Terms are facially overbroad and therefore likely to burden Covidien with excessive and irrelevant data.  Thus, while I find the Rule 26(b)(1) balance of interests weighs in favor of ordering Covidien to engage in an additional search for documents responsive to the First and Third Set of Requests, I also find that the Proposed Terms must be modified so as to connect the search strings to the issues and claims in dispute.  The modifications I now propose and recommend to the Court represent the culmination of four mediation sessions and two rounds of edits, during which I solicited and received feedback from the parties.

### A.  The First Set of Requests

The search terms I recommend for the First Set of Requests ("Recommended Merits Terms"), attached hereto as **Exhibit D**, reflect a reduction from the original proposal of 229 searches to 67 searches.  Perhaps most importantly, the Recommended Merits Terms reflect the inclusion of modifiers chosen to ensure the search strings are tailored to the claims at issue and the underlying allegations.  The most critical modification is derived from the parties' general agreement, voiced during mediation, that documents that reference Mallinckrodt (and known abbreviations), pharmaceuticals, opioids, opiates, the Spinoff, and "Jameson" (Covidien's code word for the Spinoff) bear relevance to the Adversary Proceeding, and therefore I have revised many of the Proposed Terms to include these modifying words.  Other examples follow.  The name Mallinckrodt International Finance S.A. ("MIFSA") holds relevance because of the allegation that Covidien caused it, as a Mallinckrodt subsidiary, to "issue two series of notes that generated proceeds totaling $889.3 million," "shortly before completing the spinoff."  (Adv. Dkt.

No. 61 at 10-11, ¶ 11).  The Trust alleges, relatedly, that "Covidien received $721 million of the proceeds while Mallinckrodt was ultimately responsible for repayment of the entire obligation under the notes"; and, "[f]urther, in connection with the spinoff, Covidien shifted hundreds of millions of dollars in tax liability onto Mallinckrodt. Covidien also imposed on Mallinckrodt a putative obligation to indemnify Covidien for all opioid-related liabilities." *Id.* at 11, ¶ 11. Accordingly, search strings targeted at transfers or assumptions of debt or opioid-related liabilities are appropriate, as are search strings targeted at whether Mallinckrodt received adequate consideration from Covidien.  Similarly, in light of the Amended Complaint's allegations that the totality of the circumstances reflects Covidien took actions intended to hinder, delay, or defraud Mallinckrodt's creditors, search strings targeted at evidence tending to show Covidien caused Mallinckrodt to incur debt, attempted to extricate itself from Mallinckrodt's liabilities, and caused Mallinckrodt to increase its potential opioid liability while it availed itself of Mallinckrodt's profits are appropriate.

In a similar vein, the phrase "Separation Agreement" and name "JPMorgan" (and known abbreviations) hold relevance because of the following allegation:

> The terms of the spinoff were set forth in the Separation and Distribution Agreement, dated June 28, 2013, between Covidien plc and Mallinckrodt plc ("Separation Agreement"). Under the Separation Agreement, Mallinckrodt plc purportedly assumed all liabilities that were incurred through the operation and ownership of Covidien's pharmaceutical and imaging businesses *at any time*, including the liabilities associated with the operation and ownership of the pharmaceuticals business before and after the spinoff. In Covidien's view, the Separation Agreement saddled Mallinckrodt plc with liability for any and all claims relating to Mallinckrodt's opioid business, regardless of whether the underlying conduct took place before or after the spinoff. The Separation Agreement also purportedly saddled Mallinckrodt with substantial liabilities relating to certain of Covidien's legacy indebtedness, including a credit facility with JPMorgan and multiple tranches of secured and unsecured notes.

(Adv. Dkt. No. 61 at 109, ¶ 279).

The "Drug Enforcement Agency" or "DEA" holds relevance because of the allegations that in 2011, prior to the Spinoff, it publicly referred to Mallinckrodt as "'the kingpin within the drug Cartel' of pharma companies driving the opioid epidemic," *id.* at 7, ¶ 3, and subpoenaed Mallinckrodt for documents related to its suspicious order monitoring system, *id.* at 9, ¶ 7, which subpoena Mallinckrodt received two weeks prior to Covidien's announcement of the Spinoff, *id.* at 10, ¶ 10.  Similarly, the Amended Complaint raises allegations that include reference to the Department of Justice and its determination that Mallinckrodt "ignored its responsibility to report suspicious orders of as many as 500 million of its pills that it sent to Florida from 2008 to 2012, which was 66% of all oxycodone sold in the state." (Adv. Dkt. No. 61 at 59, ¶¶ 129; 60, ¶ 134; 61, ¶ 135; 84, ¶ 198).  These allegations implicate the efficacy of Mallinckrodt's suspicious order monitoring system, which it was required to design and implement in accordance with the Controlled Substances Act, state laws, and DEA regulations, *see, e.g.,* (Adv. Dkt. No. 61 at 46, ¶ 100), and search strings targeted at information related to this monitoring system are therefore appropriate.

The phrase "equivalent value" holds relevance because the Trust alleges "Covidien siphoned $867 million in a series of transfers from Mallinckrodt and did not provide reasonably equivalent value in exchange,"  (Adv. Dkt. No. 103, ¶ 254); and that Mallinckrodt did not receive "reasonably equivalent value for the spinoff debt transfers," *id.* at 111, ¶ 274, for assuming tax liability, *id.* at 112, ¶ 277, or in exchange for "shouldering the Putative Indemnity Obligations," *id.* at 116, ¶ 284.  The search string involving the combination of terms "fair* w/5 ("valu*" OR "opin*" OR exchang* OR transfer* OR transact* OR consider* OR obligation OR receiv* OR less)" modified by, among other words, JPMorgan (and known abbreviations) holds relevance, the Trust represents, because the Trust has learned during discovery that JPMorgan assisted

Covidien in marketing Mallinckrodt and identifying companies willing to provide a solvency opinion for Mallinckrodt.

These examples constitute an illustrative sampling of what I find to be search strings sufficiently tailored to the claims raised and issues in dispute.

### B.  The Third Set of Requests

The search terms I recommend for the Third Set of Requests ("Recommended Damages Terms"), attached hereto as **Exhibit E**, reflect a reduction from the original proposal of 16 searches to 14 searches. I eliminated two search strings based on the following rationale.

The search string "(assum* OR "take on" OR adopt OR accept) w/5 (debt OR opioid* OR litig* OR indebtedness) overlaps with Recommended Merits Term 24(a): "assum* OR "take on" OR "adopt*" OR "accept*" w/15 (pharma* OR opiat* OR opioid* OR oxy*)."  Deletion of the duplicative word "opioid*" from the search string removes the one word closely tied to the dispute.  I find that on balance, because Recommended Merits Terms 24(a) and 24(b) target the requested materials and the proposed term "(assum* OR "take on" OR adopt OR accept) w/5 (debt OR litig* OR indebtedness)" is too generic, this proposed search string should be removed from the list of terms.

Similarly, the search string "upstream* w/5 (cash OR money OR monies OR fund*)" is duplicative of Recommended Merits Term 65 and therefore I have removed this search string from the Recommended Damages Terms.

I otherwise find that the search terms the Trust proposed for the Third Set of Requests do not overlap with the Recommended Merits Terms and are sufficiently tailored to the dispute.

### C.  Application of the Recommended Terms will Not Give Rise to Unreasonably Duplicative or Cumulative Discovery

A comparison of the Recommend Merits Terms to the OCC Terms demonstrates a relatively minor degree of overlap, which I find is sufficiently addressed by deleting the word "Jameson" from Recommended Merits Terms 40, 43, and 49, and deleting the word "spin" from Recommended Term 43.  Any other overlap between the Recommended Merits Terms and the OCC Terms is not unreasonable, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues.

A comparison of the Recommended Damages Terms to the OCC Terms similarly demonstrates only a small amount of overlap.  First, neither the OCC Terms nor the Ad Hoc Requests reference Ernst & Young or associated abbreviations.  Neither the OCC Terms nor the Ad Hoc Requests reference "dividend restriction" or "restriction analysis."  *See* **Exhibit E**, Term No. 12.  While Ad Hoc Request 11 asked for the "IRS ruling issued to Covidien on March 1, 2013," and Recommended Damages Term 13 seeks material containing: "(spin* OR spun* OR disentangle* OR prespin OR pre-spin OR postspin OR post-spin OR Holdco OR Spinco OR Remainco OR Jameson OR Shelbourne) AND (tax OR "IRS" OR "internal revenue service" OR "ruling request")," I find this overlap is not unreasonable.   Similarly, while there is some degree of overlap between OCC Term 25 and Recommended Damages Term 4, I find the overlap is not unreasonable given the balance of considerations.[5]

---

[5] Compare: ((analy* OR eval* OR assess* OR report*) w/10 (purpose* OR source* OR use* OR allocat*)) AND ((proceed* OR fund* OR cash) w/10 (spin* OR spun* OR disentangl* OR restructur* OR reorg*)) with: ("cash management" OR "cash mgmt") AND (enterprise OR parent OR subsidiary OR spin* OR spun* OR disentangle* OR prespin OR pre-spin OR postspin OR post-spin OR Holdco OR Spinco OR Remainco OR Jameson OR Shelbourne OR Mallinckrodt OR MNK).

I find that with the modifications proposed herein, the Recommended Terms are sufficiently tailored to the needs of the case and sufficiently take into consideration the materials already produced through use of the OCC Terms.  I thus find that both sets of Recommended Terms are designed to capture the materials relevant to the proceeding without causing Covidien undue burden.

**CONCLUSION**

For the forgoing reasons, I recommend that the Court order the Trust to modify its proposed search terms for the First Set of Requests and Third Set of Requests as described herein and order Covidien to utilize the Recommended Merits Terms and Recommended Damages Terms to engage in further review of materials within its custody, possession, and control to identify documents responsive to the Requests and produce those documents which are relevant and not subject to privilege.  In doing so, Covidien should apply the Recommended Merits Terms and Recommended Damages Terms (1) in lowercase letters except where specified, and (2) across all custodians identified in the parties' Rule 26 disclosures.

I further recommend that the Court extend the pretrial deadlines as follows:

(1) The deadline by which to complete fact discovery is extended from March 31, 2026 up to and including **January 29, 2027**;

    a.  Covidien shall produce documents responsive to the First and Third Set of Requests, utilizing the Recommended Terms, on or before **July 31, 2026**;

    b.  The Trust is permitted leave to propound targeted follow-up requests for production, not to exceed 10 discrete requests, on or before **August 31, 2026**;

    c.  The parties shall complete all document discovery by **September 30, 2026**;

d. All depositions of fact witnesses shall be completed on or before **January 29, 2027**;

(2) The deadline by which to complete all discovery is extended from July 31, 2026 to **May 31, 2027**;

   a. Parties offering affirmative expert opinions (regardless of which party has the initial burden of proof on the subject matter) shall make their Federal Rule 26(a)(2) disclosure of such expert testimony on or before **February 26, 2027**;

   b. A party offering rebuttal expert opinions to contradict or rebut expert opinions on the same subject matter identified by the other side by February 26, 2027, shall make their Rule 26(a)(2) disclosure of such expert testimony on or before **April 16, 2027**.

   c. Along with the submissions of the expert reports, the parties shall advise of the dates and times of their experts' availability for deposition, which are to be completed by the Discovery Cut Off date of May 31, 2027;

(3) The deadline for filing case dispositive motions is extended from September 18, 2026 up to and including **July 30, 2027**;

   a. The deadline for filing oppositions to case dispositive motions is extended from October 19, 2026 up to and including **August 27, 2027**; and

   b. The deadline for filing replies in support of case dispositive motions is extended from November 20, 2026 up to and including **September 24, 2027**.

March 20, 2026

_____
Hon. Lawrence F. Stengel (Ret.)
Mediator

30