**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MALLINCKRODT PLC, | Case No. 20-12522 (JTD) |
| Reorganized Debtor.[1] | |
| OPIOID MASTER DISBURSEMENT TRUST II, | |
| Plaintiff, | |
| v. | Adversary Proceeding |
| COVIDIEN UNLIMITED COMPANY (formerly known as Covidien Ltd. and Covidien plc), COVIDIEN GROUP HOLDINGS LTD. (formerly known as Covidien Ltd.), COVIDIEN INTERNATIONAL FINANCE S.A., COVIDIEN GROUP S.À R.L., and DOE DEFENDANTS 1-500, | No. 22-50433 (JTD) |
| Defendants. | |

**PLAINTIFF OPIOID MASTER DISBURSEMENT TRUST II'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS**

Plaintiff, the Opioid Master Disbursement Trust II ("Trust"), by and through its undersigned counsel, hereby propounds this first set of requests for production of documents ("Requests") to Defendants Covidien Unlimited Company (formerly known as Covidien Ltd. and Covidien plc), Covidien Group Holdings Ltd. (formerly known as Covidien Ltd.), Covidien International Finance S.A., and Covidien Group S.à r.l. (collectively, "Defendants"). In accordance with Federal Rule of Civil Procedure 34, made applicable to the above-captioned adversary proceeding through Federal Rule of Bankruptcy Procedure 7034, the Trust hereby

---

[1] The "Reorganized Debtor" in the above-captioned chapter 11 case is Mallinckrodt plc. On May 3, 2023, the Court closed the chapter 11 cases of the Reorganized Debtor's debtor-affiliates (together with the Reorganized Debtor, "Debtors"). A complete list of the Debtors may be obtained on the website of the Reorganized Debtor's claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt. The Reorganized Debtor's mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

demands that Defendants provide written responses to these Requests and produce the documents, communications, and things described herein for discovery and inspection, in accordance with the instructions and definitions set forth below at the offices of Cole Schotz P.C., 500 Delaware Avenue Suite 1410, Wilmington, Delaware 19801, Attn: Justin R. Alberto, within thirty (30) days from the date of service of these Requests.

## DEFINITIONS

If You do not understand the meaning of any term used herein, You should promptly seek clarification through the undersigned.  As used in the Requests, the terms listed below shall be defined as follows:

1. The term "Adversary Proceeding" refers to the above-captioned adversary proceeding, Adv. Pro. No. 22-50433 (JTD).

2. The term "Amended Complaint" refers to the Amended Complaint filed in the Adversary Proceeding at Adv. D.I. 59, on February 8, 2024, or any amendments thereto.

3. The term "Affiliate" or "Affiliates" has the meaning ascribed to the term "affiliate" under 11 U.S.C. § 101(2).

4. The term "Answer" refers to the Answer filed in the Adversary Proceeding at Adv. D.I. 76, on March 25, 2024, or any amendments thereto.

5. The term "Bain & Company" refers to Bain & Company, Inc. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

6. The term "Bankruptcy Court" refers to the United States Bankruptcy Court for the District of Delaware presiding over the Adversary Proceeding.

7.       The term "Cash Transfers" refers to those transfers of cash from Pre-Spin Mallinckrodt to Pre-Spin Covidien, including (a) the net total of $505 million in cash Pre-Spin Mallinckrodt transferred to Pre-Spin Covidien in fiscal year 2010, (b) the net total of $258 million in cash Pre-Spin Mallinckrodt transferred to Pre-Spin Covidien in fiscal year 2011, and (c) the net total of $104 million in cash Pre-Spin Mallinckrodt transferred to Pre-Spin Covidien in fiscal year 2012.

8.       The term "Central Bank of Ireland" refers to the Central Bank of Ireland also known as Banc Ceannais na hÉireann and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

9.       The term "Chapter 11 Cases" refers to the above-captioned chapter 11 cases, jointly administered under Case No. 20-12522.

10.       The term "Communication" or "Communications" includes, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

11.       The term "Covidien" refers to Covidien Unlimited Company (formerly known as Covidien Ltd. and Covidien plc), Covidien Group Holdings Ltd. (formerly known as Covidien Ltd.), Covidien International Finance S.A., and Covidien Group S.à r.l., and their direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

12.       The term "Debtors" refers to Mallinckrodt plc and its affiliated debtors and debtors-in-possession identified in the jointly administered Chapter 11 Cases, and their predecessors and predecessors-in-interest, including the Debtors' professionals in the Chapter 11 Cases.

13.     The term "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A) and includes, without limitation, any written material, whether typed, handwritten, printed or otherwise recorded, and whether in draft or final form, of any kind or nature, or any photograph, scan, microfilm or other reproduction thereof, and any audio or video recordings or transcripts thereof.  Any draft or non-identical copy of a Document is a separate Document.  Documents shall include Communications.

14.     The term "Duff & Phelps" refers to Duff & Phelps Investor Management Co. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

15.     The term "Fitch Ratings" refers to Fitch Ratings, Inc. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

16.     The term "Goldman Sachs" refers to Goldman Sachs & Co. LLC and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

17.     The term "Houlihan Lokey" refers to Houlihan Lokey, Inc. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

18.     The word "including" means including without limitation.

19.    The term "Interrogatories" refers to any interrogatories served or propounded by the Trust in this Adversary Proceeding.

20.    The term "McKinsey" refers to McKinsey & Company and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

21.    The term "Medtronic" refers to: (i) Medtronic plc; (ii) all direct or indirect subsidiaries of Medtronic plc; (iii) all Affiliates of Medtronic plc; (iv) any predecessor or predecessor-in-interest of Medtronic plc; and (v) any successor or successor-in-interest of Medtronic plc, including the officers, directors, executives, agents, and representatives of the same.

22.    The term "MIFSA" refers to Mallinckrodt International Finance S.A., and its agents, officers, directors and their direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest.

23.    The term "Moody's Investors Service" refers to Moody's Investors Service, Inc. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

24.    The term "Opioid Claims" refers to any and all claims instituted against, threatened, or investigated against Covidien and/or the Debtors concerning Opioids.

25.    The term "Opioids Business" refers to Covidien's manufacturing, sales, marketing, and any other business operations concerning Opioids at any time.

26.    The terms "Opioid" and "Opioids" refer to any and all natural and synthetic drugs, legal and illicit, that derive from, or mimic, natural substances found in the opium poppy plant,

including generic and branded opioid pharmaceutical products and opioid active pharmaceutical ingredients, and including those products identified in paragraph 30 of the Amended Complaint.

27.     The term "Person" refers to any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

28.     The term "Petition Date" refers to October 12, 2020.

29.     The term "Post-Spin Covidien" refers to: (i) Defendants; (ii) all direct or indirect subsidiaries of Defendants; (iii) all Affiliates of any of the Defendants; (iv) any predecessor or predecessor-in-interest of Defendants; and (v) any successor or successor-in-interest of Defendants, for the period after June 28, 2013.

30.     The term "Post-Spin Mallinckrodt" refers to: (i) the Debtors; (ii) all direct or indirect subsidiaries of Mallinckrodt plc; and (iii) all Affiliates of any of the Debtors, for the period after June 28, 2013.

31.     The term "Pre-2007 Spinoff Tax Liabilities" refers to any liabilities relating to or arising from any tax sharing agreement among Covidien plc, Tyco International Ltd., and TE Connectivity Ltd. (formerly Tyco Electronics Ltd.) for U.S. income tax liabilities arising prior to Tyco International Ltd.'s 2007 spinoff of Covidien.

32.     The term "Pre-Spin Covidien" refers to: (i) Defendants; (ii) all direct or indirect subsidiaries of Defendants; (iii) all Affiliates of any of the Defendants; (iv) any predecessor or predecessor-in-interest of Defendants; and (v) any successor or successor-in-interest of Defendants, for the period prior to June 28, 2013.  Pre-Spin Covidien includes those entities defined herein as Pre-Spin Mallinckrodt.

33.     The term "Pre-Spin Covidien Board" refers to the board of directors of Pre-Spin Covidien.

34.     The term "Pre-Spin Mallinckrodt" refers to those entities within, part of, or that comprised Pre-Spin Covidien, that developed, manufactured, or sold pharmaceutical products (including, but not limited to, Opioid products) and active pharmaceutical ingredients, for the period prior to June 28, 2013.

35.     The term "Project Jameson" refers to the planning and implementation of the Spinoff and the efforts or activities of the Pre-Spin Covidien Board and Pre-Spin Covidien's executive team to analyze and evaluate a sale and/or spinoff of the Opioids Business.

36.     The terms "related to" or "regarding" or "concerning" mean evidences, supports, constitutes, contains, records, discusses, summarizes, analyzes, discloses, or refers to, in whole or in part.

37.     The term "S&P Global Ratings" refers to Standard & Poor's Financial Services LLC and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

38.     The term "SEC" refers to the United States Securities and Exchange Commission.

39.     The term "Separation Agreement" refers to that certain Separation and Distribution Agreement by and between Covidien plc and Mallinckrodt plc dated June 28, 2013.

40.     The term "Spinoff Date" refers to June 28, 2013.

41.     The term "Spinoff Notes" refers to MIFSA's issuance of $300 million of 3.50% senior unsecured notes due 2018 and MIFSA's issuance of $600 million of 4.75% senior unsecured notes due 2023.

42.     The term "Spinoff" refers to that certain June 28, 2013 divestiture by which Pre-Spin Mallinckrodt separated from Pre-Spin Covidien.

43.     The term "Suspicious Order Monitoring System" refers to the system used by Pre-Spin Covidien to detect and investigate suspicious orders of Opioids as required by the Controlled Substances Act.

44.     The term "Tax Matters Agreement" refers to the tax sharing agreement by and between Covidien plc and Mallinckrodt plc dated June 28, 2013.

45.     The term "Transfers" refers to those transfers the Trust seeks to avoid in the Amended Complaint.

46.     The term "TSAs" refers to the transition support agreements executed in connection with the Spinoff.

47.     The terms "You" and "Your" refer to each of the Defendants.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests, the following Instructions shall be followed:

1.     These instructions incorporate by reference the requirements and duties of the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

2.     Unless otherwise specified, the relevant time period covered by these Requests is from June 29, 2007, through the Petition Date, and shall encompass all Documents and information relating or referring in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior to or after that date.

3.     Unless otherwise indicated, the Documents requested to be produced herein include all Documents in Your possession, custody, or control or the possession, custody, or control of

8

anyone acting on Your behalf.  This includes Documents in the possession, custody, or control of each of Your counsel, representatives, agents, servants, employees, experts, investigators, or consultants and, unless otherwise privileged, their counsel, representatives, agents, servants, employees, experts, investigators, or consultants, wherever those Documents and materials are maintained.

4.      You must produce the original and all non-identical copies of Documents, including drafts and copies upon which notations or additional writings have been made.  A Document with handwritten, typewritten, or other recorded notes, editing marks, etc., is not and shall not be deemed identical to one without such modifications, additions, or deletions.  The term "original" includes the file copy and copies of any document if there is no actual original or ribbon copy.  If You are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.

5.      Documents not otherwise responsive to these Requests should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are responsive to these Requests; (b) if such Documents are attached to, enclosed with, or accompany Documents that are responsive to these Requests; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials that relate to Documents that are responsive to these Requests.

6.      Documents should be produced in the manner they are kept in the ordinary course of business.

7.      In accordance with applicable rules, where You assert a claim of privilege in objecting to a Request and withhold a responsive Document on this basis, You must provide a privilege log setting forth: (a) the nature of the privilege being claimed; (b) the type Document

9

being withheld; (c) the general subject matter of the Document; (d) the date of the Document; (e) the identity and capacity of the author, sender, and addressee of the Document; (f) the identity and capacity of each person to whom the original or a copy of the Document was furnished; and (g) such other information sufficient to identify the Document, including, where appropriate, the title or subject line of the Document.

8.      If a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.

9.      If any requested Document or other Document potentially relevant to this Action is subject to destruction under any Document retention or destruction program, the Document(s) should be exempted from any scheduled destruction and should not be destroyed unless otherwise permitted by the Court.

10.     If Documents stored electronically have been "deleted" from a computer, but are still retrievable in some form, any such responsive Documents shall be retrieved and produced, either in hard copy or a readily readable electronically recorded form.

11.     Documents shall not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If You assert a privilege

10

to part of the material contained in a Document, You must clearly indicate the portions as to which You claim the privilege.  When a Document has been redacted or altered in any fashion, You must provide a redaction log setting forth: (a) the nature of the privilege being claimed or the other purposed basis for the redaction or alteration; (b) the type of Document being redacted if not otherwise apparent; (c) the general subject matter of the Document or information being redacted; (d) the date of the Document; (e) the identity and capacity of the author, sender, and addressee of the Document; (f) the identity and capacity of each person to whom the original or a copy of the Document was furnished; (g) the Bates number of the Document; and (h) such other information sufficient to identify the Document, including, where appropriate, the title or subject line of the Document.

12.    These Requests are not intended to be duplicative including any prior discovery requests.  All Requests should be responded to fully and to the extent not covered by other Requests.

13.    The singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; reference to any gender includes the other gender; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all."  Any ambiguity in a discovery request shall be construed to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

14.    If an objection is made to any Request, state Your objection and the ground or grounds with particularity in Your written response.  Any ground not stated will be waived.  If an

objection is made only to part of the Request, identify that part in Your written response and state Your objection and the ground(s) therefore.

15. If the response to any Request consists, in whole or in part, of an objection based on/or including burden, then provide those documents that can be produced without undue burden. For such documents that are too burdensome to produce, describe the process or method required to obtain such documents, the quantity and location of the documents involved, and the estimated costs of the search.

16. These Requests are continuing, to the full extent required or permitted under the Bankruptcy Rules. If, after producing the requested Documents, You obtain or become aware of any further Documents responsive to this request, You are required to produce such additional Documents. Supplemental responses should be served within thirty (30) days after such information or documents become known to You.

17. If any part of these Requests cannot be responded to in full, respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

18. The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests based on the knowledge or information that You possess at the time You respond to these Requests. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request, so state in Your response to that Request.

19. If the identity of Documents responsive to a Request is not known, then that lack of knowledge must be specifically indicated in writing. If any information requested is not in Your possession but is known or believed to be in the possession of another person or entity, then identify

that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

20.    By serving these Requests, the Trust expressly reserves all rights, does not waive any of its rights, and expressly reserves the right to modify or otherwise to supplement these Requests.

**REQUESTS FOR PRODUCTION**

1. Documents sufficient to identify any directors, officers, and executives of Pre-Spin Covidien and all committees, subcommittees, and special boards that the directors, officers, and executives were a part of, including any corporate organizational charts for Pre-Spin Covidien and Pre-Spin Mallinckrodt.

2. All minutes, agendas, board books, invitations, notes, presentation materials, analyses, memoranda, reports, or updates of meetings of the Pre-Spin Covidien Board, committees, subcommittees, and special boards relating to Pre-Spin Mallinckrodt and the Opioids Business.

3. All Documents (including minutes, presentations, and other materials provided to the Pre-Spin Covidien Board, committees, subcommittees, and special boards) relating to the Opioids Business, Opioid abuse, Opioid Claims, or Opioid Diversion.

4. All Documents concerning actions taken by the Pre-Spin Covidien Board, committees, subcommittees, or special boards without a meeting relating to Pre-Spin Mallinckrodt and/or the Opioids Business.

5. All Documents relating to any presentations prepared by management or third-party advisors (including any drafts thereof) provided to the Pre-Spin Covidien Board, committees, subcommittees, or special boards of Pre-Spin Covidien relating to Pre-Spin Mallinckrodt and the Opioids Business.

6. All Documents concerning any cash transfers, asset transfers, upstreaming of funds, dividends, intercompany notes, or intercompany loans from the assets of Pre-Spin Mallinckrodt to or for the benefit of Pre-Spin Covidien.

7. All Documents sufficient to show any intercompany agreements, or drafts thereof, entered into or contemplated between Pre-Spin Mallinckrodt and Pre-Spin Covidien, including

14

relating to sales and marketing, intellectual property, shared services, indemnification, or contribution, including all Documents relating to any decision concerning, purpose of, rationale for, or effect of any such agreements, any drafting, negotiations, or approval of any such agreements (or lack thereof), and the interpretation or discussion of any terms or provisions of any such agreements.

8.     All Documents concerning any salary, payment, bonus, fee, or compensation of any kind offered or provided to, or requested by, any individuals relating to the Spinoff.

9.     Documents sufficient to identify the operations of Pre-Spin Covidien's cash management system.

10.    All Documents that identify, refer to, or relate to the Cash Transfers, including minutes and materials provided to the Pre-Spin Covidien Board concerning the Pre-Spin Covidien Board's consideration, negotiation, and decision to effectuate the Cash Transfers.

11.    Documents sufficient to identify the total amount of sales volume, revenue, and profits for each Pre-Spin Covidien and Pre-Spin Mallinckrodt entity comprising or related to the Opioids Business.

12.    All Documents that identify, refer to, or relate to Opioid abuse or Opioid diversion and any liability or potential liability related to the Opioids Business, including Pre-Spin Covidien's knowledge of any actual or potential Opioid Claims, Opioid abuse, or Opioid diversion.

13.    All Documents that constitute, identify, refer to, or relate to any media regarding Opioid abuse, Opioid diversion, suspicious order monitoring systems, governmental investigations into the Opioid crisis and/or Opioid epidemic, and claims against other parties regarding the Opioid crisis and/or Opioid epidemic.

14.    All Documents concerning any investigation or subpoenas related to the Opioids Business by a government agency, including all Documents that You produced to any governmental authority relating to the Opioids Business.

15.    All Communications with any third-party, including Bain & Company, McKinsey, Goldman Sachs, and Houlihan Lokey concerning the Opioids Business.

16.    All Documents that discuss, identify, refer to, or relate to the sale or potential sale of any part of, or all of, the Opioids Business, including any Documents concerning bids, offers, or indications of interest to purchase any portion of the Opioids Business.

17.    Documents sufficient to identify when Pre-Spin Covidien first contemplated the Spinoff or any divestiture of its Opioids Business.

18.    All Documents concerning Project Jameson, including all Documents concerning the July 7, 2011 Project Jameson presentation labeled "Disentanglement," the December 6, 2011 Project Jameson Master Document, the May 9, 2012 Project Jameson update, and the March 12, 2013 Project Jameson Financial Reporting Playbook.

19.    All Documents relating to the decision concerning, purpose of, rationale for, motivation for, deliberation concerning, reason behind, and effect of any transfer, distribution, disposition, allocation, or change of control of any rights, obligations, liabilities, claims, funds, assets, or consideration of any kind made in connection with the Spinoff.

20.    All Documents concerning any financing relating to the Spinoff.

21.    All Documents (including minutes, presentations, and other materials provided to the Pre-Spin Covidien Board) concerning the analysis of, consideration of, negotiation of, and the decision to implement the Spinoff, including all Documents concerning the allocation of liabilities and assets in connection with the Spinoff.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MALLINCKRODT PLC, | Case No. 20-12522 (JTD) |
| Reorganized Debtor.[1] | |
| OPIOID MASTER DISBURSEMENT TRUST II, | |
| Plaintiff, | |
| v. | Adversary Proceeding |
| COVIDIEN UNLIMITED COMPANY (formerly known as Covidien Ltd. and Covidien plc), COVIDIEN GROUP HOLDINGS LTD. (formerly known as Covidien Ltd.), COVIDIEN INTERNATIONAL FINANCE S.A., COVIDIEN GROUP S.À R.L., and DOE DEFENDANTS 1-500, | No. 22-50433 (JTD) |
| Defendants. | |

**PLAINTIFF OPIOID MASTER DISBURSEMENT TRUST II'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS**

Plaintiff, the Opioid Master Disbursement Trust II ("Trust"), by and through its undersigned counsel, hereby propounds this first set of requests for production of documents ("Requests") to Defendants Covidien Unlimited Company (formerly known as Covidien Ltd. and Covidien plc), Covidien Group Holdings Ltd. (formerly known as Covidien Ltd.), Covidien International Finance S.A., and Covidien Group S.à r.l. (collectively, "Defendants"). In accordance with Federal Rule of Civil Procedure 34, made applicable to the above-captioned adversary proceeding through Federal Rule of Bankruptcy Procedure 7034, the Trust hereby

---

[1]    The "Reorganized Debtor" in the above-captioned chapter 11 case is Mallinckrodt plc. On May 3, 2023, the Court closed the chapter 11 cases of the Reorganized Debtor's debtor-affiliates (together with the Reorganized Debtor, "Debtors"). A complete list of the Debtors may be obtained on the website of the Reorganized Debtor's claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt. The Reorganized Debtor's mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

demands that Defendants provide written responses to these Requests and produce the documents, communications, and things described herein for discovery and inspection, in accordance with the instructions and definitions set forth below at the offices of Cole Schotz P.C., 500 Delaware Avenue Suite 1410, Wilmington, Delaware 19801, Attn: Justin R. Alberto, within thirty (30) days from the date of service of these Requests.

## DEFINITIONS

If You do not understand the meaning of any term used herein, You should promptly seek clarification through the undersigned.  As used in the Requests, the terms listed below shall be defined as follows:

1.      The term "Adversary Proceeding" refers to the above-captioned adversary proceeding, Adv. Pro. No. 22-50433 (JTD).

2.      The term "Amended Complaint" refers to the Amended Complaint filed in the Adversary Proceeding at Adv. D.I. 59, on February 8, 2024, or any amendments thereto.

3.      The term "Affiliate" or "Affiliates" has the meaning ascribed to the term "affiliate" under 11 U.S.C. § 101(2).

4.      The term "Answer" refers to the Answer filed in the Adversary Proceeding at Adv. D.I. 76, on March 25, 2024, or any amendments thereto.

5.      The term "Bain & Company" refers to Bain & Company, Inc. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

6.      The term "Bankruptcy Court" refers to the United States Bankruptcy Court for the District of Delaware presiding over the Adversary Proceeding.

2

7.      The term "Cash Transfers" refers to those transfers of cash from Pre-Spin Mallinckrodt to Pre-Spin Covidien, including (a) the net total of $505 million in cash Pre-Spin Mallinckrodt transferred to Pre-Spin Covidien in fiscal year 2010, (b) the net total of $258 million in cash Pre-Spin Mallinckrodt transferred to Pre-Spin Covidien in fiscal year 2011, and (c) the net total of $104 million in cash Pre-Spin Mallinckrodt transferred to Pre-Spin Covidien in fiscal year 2012.

8.      The term "Central Bank of Ireland" refers to the Central Bank of Ireland also known as Banc Ceannais na hÉireann and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

9.      The term "Chapter 11 Cases" refers to the above-captioned chapter 11 cases, jointly administered under Case No. 20-12522.

10.     The term "Communication" or "Communications" includes, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

11.     The term "Covidien" refers to Covidien Unlimited Company (formerly known as Covidien Ltd. and Covidien plc), Covidien Group Holdings Ltd. (formerly known as Covidien Ltd.), Covidien International Finance S.A., and Covidien Group S.à r.l., and their direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

12.     The term "Debtors" refers to Mallinckrodt plc and its affiliated debtors and debtors-in-possession identified in the jointly administered Chapter 11 Cases, and their predecessors and predecessors-in-interest, including the Debtors' professionals in the Chapter 11 Cases.

13.      The term "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A) and includes, without limitation, any written material, whether typed, handwritten, printed or otherwise recorded, and whether in draft or final form, of any kind or nature, or any photograph, scan, microfilm or other reproduction thereof, and any audio or video recordings or transcripts thereof.  Any draft or non-identical copy of a Document is a separate Document.  Documents shall include Communications.

14.      The term "Duff & Phelps" refers to Duff & Phelps Investor Management Co. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

15.      The term "Fitch Ratings" refers to Fitch Ratings, Inc. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

16.      The term "Goldman Sachs" refers to Goldman Sachs & Co. LLC and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

17.      The term "Houlihan Lokey" refers to Houlihan Lokey, Inc. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

18.      The word "including" means including without limitation.

4

19.     The term "Interrogatories" refers to any interrogatories served or propounded by the Trust in this Adversary Proceeding.

20.     The term "McKinsey" refers to McKinsey & Company and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

21.     The term "Medtronic" refers to: (i) Medtronic plc; (ii) all direct or indirect subsidiaries of Medtronic plc; (iii) all Affiliates of Medtronic plc; (iv) any predecessor or predecessor-in-interest of Medtronic plc; and (v) any successor or successor-in-interest of Medtronic plc, including the officers, directors, executives, agents, and representatives of the same.

22.     The term "MIFSA" refers to Mallinckrodt International Finance S.A., and its agents, officers, directors and their direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest.

23.     The term "Moody's Investors Service" refers to Moody's Investors Service, Inc. and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

24.     The term "Opioid Claims" refers to any and all claims instituted against, threatened, or investigated against Covidien and/or the Debtors concerning Opioids.

25.     The term "Opioids Business" refers to Covidien's manufacturing, sales, marketing, and any other business operations concerning Opioids at any time.

26.     The terms "Opioid" and "Opioids" refer to any and all natural and synthetic drugs, legal and illicit, that derive from, or mimic, natural substances found in the opium poppy plant,

including generic and branded opioid pharmaceutical products and opioid active pharmaceutical ingredients, and including those products identified in paragraph 30 of the Amended Complaint.

27. The term "Person" refers to any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

28. The term "Petition Date" refers to October 12, 2020.

29. The term "Post-Spin Covidien" refers to: (i) Defendants; (ii) all direct or indirect subsidiaries of Defendants; (iii) all Affiliates of any of the Defendants; (iv) any predecessor or predecessor-in-interest of Defendants; and (v) any successor or successor-in-interest of Defendants, for the period after June 28, 2013.

30. The term "Post-Spin Mallinckrodt" refers to: (i) the Debtors; (ii) all direct or indirect subsidiaries of Mallinckrodt plc; and (iii) all Affiliates of any of the Debtors, for the period after June 28, 2013.

31. The term "Pre-2007 Spinoff Tax Liabilities" refers to any liabilities relating to or arising from any tax sharing agreement among Covidien plc, Tyco International Ltd., and TE Connectivity Ltd. (formerly Tyco Electronics Ltd.) for U.S. income tax liabilities arising prior to Tyco International Ltd.'s 2007 spinoff of Covidien.

32. The term "Pre-Spin Covidien" refers to: (i) Defendants; (ii) all direct or indirect subsidiaries of Defendants; (iii) all Affiliates of any of the Defendants; (iv) any predecessor or predecessor-in-interest of Defendants; and (v) any successor or successor-in-interest of Defendants, for the period prior to June 28, 2013.  Pre-Spin Covidien includes those entities defined herein as Pre-Spin Mallinckrodt.

33. The term "Pre-Spin Covidien Board" refers to the board of directors of Pre-Spin Covidien.

6

34.     The term "Pre-Spin Mallinckrodt" refers to those entities within, part of, or that comprised Pre-Spin Covidien, that developed, manufactured, or sold pharmaceutical products (including, but not limited to, Opioid products) and active pharmaceutical ingredients, for the period prior to June 28, 2013.

35.     The term "Project Jameson" refers to the planning and implementation of the Spinoff and the efforts or activities of the Pre-Spin Covidien Board and Pre-Spin Covidien's executive team to analyze and evaluate a sale and/or spinoff of the Opioids Business.

36.     The terms "related to" or "regarding" or "concerning" mean evidences, supports, constitutes, contains, records, discusses, summarizes, analyzes, discloses, or refers to, in whole or in part.

37.     The term "S&P Global Ratings" refers to Standard & Poor's Financial Services LLC and its direct or indirect subsidiaries, Affiliates, predecessors or predecessors-in-interest, and successors or successors-in-interest, including the officers, directors, executives, agents, and representatives of the same.

38.     The term "SEC" refers to the United States Securities and Exchange Commission.

39.     The term "Separation Agreement" refers to that certain Separation and Distribution Agreement by and between Covidien plc and Mallinckrodt plc dated June 28, 2013.

40.     The term "Spinoff Date" refers to June 28, 2013.

41.     The term "Spinoff Notes" refers to MIFSA's issuance of $300 million of 3.50% senior unsecured notes due 2018 and MIFSA's issuance of $600 million of 4.75% senior unsecured notes due 2023.

42.     The term "Spinoff" refers to that certain June 28, 2013 divestiture by which Pre-Spin Mallinckrodt separated from Pre-Spin Covidien.

43.     The term "Suspicious Order Monitoring System" refers to the system used by Pre-Spin Covidien to detect and investigate suspicious orders of Opioids as required by the Controlled Substances Act.

44.     The term "Tax Matters Agreement" refers to the tax sharing agreement by and between Covidien plc and Mallinckrodt plc dated June 28, 2013.

45.     The term "Transfers" refers to those transfers the Trust seeks to avoid in the Amended Complaint.

46.     The term "TSAs" refers to the transition support agreements executed in connection with the Spinoff.

47.     The terms "You" and "Your" refer to each of the Defendants.

## **INSTRUCTIONS**

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests, the following Instructions shall be followed:

1.     These instructions incorporate by reference the requirements and duties of the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

2.     Unless otherwise specified, the relevant time period covered by these Requests is from June 29, 2007, through the Petition Date, and shall encompass all Documents and information relating or referring in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior to or after that date.

3.     Unless otherwise indicated, the Documents requested to be produced herein include all Documents in Your possession, custody, or control or the possession, custody, or control of

anyone acting on Your behalf.  This includes Documents in the possession, custody, or control of each of Your counsel, representatives, agents, servants, employees, experts, investigators, or consultants and, unless otherwise privileged, their counsel, representatives, agents, servants, employees, experts, investigators, or consultants, wherever those Documents and materials are maintained.

4.      You must produce the original and all non-identical copies of Documents, including drafts and copies upon which notations or additional writings have been made.  A Document with handwritten, typewritten, or other recorded notes, editing marks, etc., is not and shall not be deemed identical to one without such modifications, additions, or deletions.  The term "original" includes the file copy and copies of any document if there is no actual original or ribbon copy.  If You are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.

5.      Documents not otherwise responsive to these Requests should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are responsive to these Requests; (b) if such Documents are attached to, enclosed with, or accompany Documents that are responsive to these Requests; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials that relate to Documents that are responsive to these Requests.

6.      Documents should be produced in the manner they are kept in the ordinary course of business.

7.      In accordance with applicable rules, where You assert a claim of privilege in objecting to a Request and withhold a responsive Document on this basis, You must provide a privilege log setting forth: (a) the nature of the privilege being claimed; (b) the type Document

9

being withheld; (c) the general subject matter of the Document; (d) the date of the Document; (e) the identity and capacity of the author, sender, and addressee of the Document; (f) the identity and capacity of each person to whom the original or a copy of the Document was furnished; and (g) such other information sufficient to identify the Document, including, where appropriate, the title or subject line of the Document.

8.      If a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.

9.      If any requested Document or other Document potentially relevant to this Action is subject to destruction under any Document retention or destruction program, the Document(s) should be exempted from any scheduled destruction and should not be destroyed unless otherwise permitted by the Court.

10.     If Documents stored electronically have been "deleted" from a computer, but are still retrievable in some form, any such responsive Documents shall be retrieved and produced, either in hard copy or a readily readable electronically recorded form.

11.     Documents shall not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If You assert a privilege

10

to part of the material contained in a Document, You must clearly indicate the portions as to which You claim the privilege.  When a Document has been redacted or altered in any fashion, You must provide a redaction log setting forth: (a) the nature of the privilege being claimed or the other purposed basis for the redaction or alteration; (b) the type of Document being redacted if not otherwise apparent; (c) the general subject matter of the Document or information being redacted; (d) the date of the Document; (e) the identity and capacity of the author, sender, and addressee of the Document; (f) the identity and capacity of each person to whom the original or a copy of the Document was furnished; (g) the Bates number of the Document; and (h) such other information sufficient to identify the Document, including, where appropriate, the title or subject line of the Document.

12.     These Requests are not intended to be duplicative including any prior discovery requests.  All Requests should be responded to fully and to the extent not covered by other Requests.

13.     The singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; reference to any gender includes the other gender; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all."  Any ambiguity in a discovery request shall be construed to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

14.     If an objection is made to any Request, state Your objection and the ground or grounds with particularity in Your written response.  Any ground not stated will be waived.  If an

11

objection is made only to part of the Request, identify that part in Your written response and state Your objection and the ground(s) therefore.

15. If the response to any Request consists, in whole or in part, of an objection based on/or including burden, then provide those documents that can be produced without undue burden. For such documents that are too burdensome to produce, describe the process or method required to obtain such documents, the quantity and location of the documents involved, and the estimated costs of the search.

16. These Requests are continuing, to the full extent required or permitted under the Bankruptcy Rules.  If, after producing the requested Documents, You obtain or become aware of any further Documents responsive to this request, You are required to produce such additional Documents.  Supplemental responses should be served within thirty (30) days after such information or documents become known to You.

17. If any part of these Requests cannot be responded to in full, respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

18. The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests based on the knowledge or information that You possess at the time You respond to these Requests.  If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request, so state in Your response to that Request.

19. If the identity of Documents responsive to a Request is not known, then that lack of knowledge must be specifically indicated in writing.  If any information requested is not in Your possession but is known or believed to be in the possession of another person or entity, then identify

12

that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

20.    By serving these Requests, the Trust expressly reserves all rights, does not waive any of its rights, and expressly reserves the right to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents sufficient to identify any directors, officers, and executives of Pre-Spin Covidien and all committees, subcommittees, and special boards that the directors, officers, and executives were a part of, including any corporate organizational charts for Pre-Spin Covidien and Pre-Spin Mallinckrodt.

2.      All minutes, agendas, board books, invitations, notes, presentation materials, analyses, memoranda, reports, or updates of meetings of the Pre-Spin Covidien Board, committees, subcommittees, and special boards relating to Pre-Spin Mallinckrodt and the Opioids Business.

3.      All Documents (including minutes, presentations, and other materials provided to the Pre-Spin Covidien Board, committees, subcommittees, and special boards) relating to the Opioids Business, Opioid abuse, Opioid Claims, or Opioid Diversion.

4.      All Documents concerning actions taken by the Pre-Spin Covidien Board, committees, subcommittees, or special boards without a meeting relating to Pre-Spin Mallinckrodt and/or the Opioids Business.

5.      All Documents relating to any presentations prepared by management or third-party advisors (including any drafts thereof) provided to the Pre-Spin Covidien Board, committees, subcommittees, or special boards of Pre-Spin Covidien relating to Pre-Spin Mallinckrodt and the Opioids Business.

6.      All Documents concerning any cash transfers, asset transfers, upstreaming of funds, dividends, intercompany notes, or intercompany loans from the assets of Pre-Spin Mallinckrodt to or for the benefit of Pre-Spin Covidien.

7.      All Documents sufficient to show any intercompany agreements, or drafts thereof, entered into or contemplated between Pre-Spin Mallinckrodt and Pre-Spin Covidien, including

14

relating to sales and marketing, intellectual property, shared services, indemnification, or contribution, including all Documents relating to any decision concerning, purpose of, rationale for, or effect of any such agreements, any drafting, negotiations, or approval of any such agreements (or lack thereof), and the interpretation or discussion of any terms or provisions of any such agreements.

8.    All Documents concerning any salary, payment, bonus, fee, or compensation of any kind offered or provided to, or requested by, any individuals relating to the Spinoff.

9.    Documents sufficient to identify the operations of Pre-Spin Covidien's cash management system.

10.    All Documents that identify, refer to, or relate to the Cash Transfers, including minutes and materials provided to the Pre-Spin Covidien Board concerning the Pre-Spin Covidien Board's consideration, negotiation, and decision to effectuate the Cash Transfers.

11.    Documents sufficient to identify the total amount of sales volume, revenue, and profits for each Pre-Spin Covidien and Pre-Spin Mallinckrodt entity comprising or related to the Opioids Business.

12.    All Documents that identify, refer to, or relate to Opioid abuse or Opioid diversion and any liability or potential liability related to the Opioids Business, including Pre-Spin Covidien's knowledge of any actual or potential Opioid Claims, Opioid abuse, or Opioid diversion.

13.    All Documents that constitute, identify, refer to, or relate to any media regarding Opioid abuse, Opioid diversion, suspicious order monitoring systems, governmental investigations into the Opioid crisis and/or Opioid epidemic, and claims against other parties regarding the Opioid crisis and/or Opioid epidemic.

14. All Documents concerning any investigation or subpoenas related to the Opioids Business by a government agency, including all Documents that You produced to any governmental authority relating to the Opioids Business.

15. All Communications with any third-party, including Bain & Company, McKinsey, Goldman Sachs, and Houlihan Lokey concerning the Opioids Business.

16. All Documents that discuss, identify, refer to, or relate to the sale or potential sale of any part of, or all of, the Opioids Business, including any Documents concerning bids, offers, or indications of interest to purchase any portion of the Opioids Business.

17. Documents sufficient to identify when Pre-Spin Covidien first contemplated the Spinoff or any divestiture of its Opioids Business.

18. All Documents concerning Project Jameson, including all Documents concerning the July 7, 2011 Project Jameson presentation labeled "Disentanglement," the December 6, 2011 Project Jameson Master Document, the May 9, 2012 Project Jameson update, and the March 12, 2013 Project Jameson Financial Reporting Playbook.

19. All Documents relating to the decision concerning, purpose of, rationale for, motivation for, deliberation concerning, reason behind, and effect of any transfer, distribution, disposition, allocation, or change of control of any rights, obligations, liabilities, claims, funds, assets, or consideration of any kind made in connection with the Spinoff.

20. All Documents concerning any financing relating to the Spinoff.

21. All Documents (including minutes, presentations, and other materials provided to the Pre-Spin Covidien Board) concerning the analysis of, consideration of, negotiation of, and the decision to implement the Spinoff, including all Documents concerning the allocation of liabilities and assets in connection with the Spinoff.

16

22. All Documents concerning the consideration, projections, calculations, or analyses of past, present, or future Opioid liabilities, including any Documents discussing the Spinoff as a potential fraudulent transfer or fraudulent conveyance.

23. All Documents relating to all options, alternatives, plans, or strategies to address past, present, or future Opioid liabilities.

24. All Documents evidencing whether Defendants, Pre-Spin Covidien, Post-Spin Covidien, MIFSA, Post-Spin Mallinckrodt, or any other entities relevant to the Adversary Proceeding are or were a "financial participant," as defined by 11 U.S.C. § 101(22A), including any contracts or agreements, including securities contracts, relevant thereto.

25. Documents sufficient to identify, refer to, or relate to any settlement payment or transfer made in connection with a securities contract that You claim provides a defense to any claim raised in the Amended Complaint.

26. All Documents evidencing, relating to, or describing the financial condition, solvency, capitalization, valuation, liabilities, or ability to timely pay debts of Pre-Spin Mallinckrodt and Post-Spin Mallinckrodt in part or in the aggregate, including financial statements, solvency reports, quality of earnings reports, audits, valuations, and fairness opinions, and any analysis related thereto.

27. All Documents evidencing, relating to, or describing the financial condition, solvency, capitalization, valuation, liabilities, or ability to timely pay debts of Pre-Spin Covidien in part or in the aggregate, including financial statements, solvency reports, quality of earnings reports, audits, valuations, and fairness opinions, and any analysis related thereto.

28. All foreign, federal, state, and local tax returns of or for Pre-Spin Mallinckrodt, Pre-Spin Covidien, and Post-Spin Covidien for the tax years 2007-2015 and 2023.

17

22. All Documents concerning the consideration, projections, calculations, or analyses of past, present, or future Opioid liabilities, including any Documents discussing the Spinoff as a potential fraudulent transfer or fraudulent conveyance.

23. All Documents relating to all options, alternatives, plans, or strategies to address past, present, or future Opioid liabilities.

24. All Documents evidencing whether Defendants, Pre-Spin Covidien, Post-Spin Covidien, MIFSA, Post-Spin Mallinckrodt, or any other entities relevant to the Adversary Proceeding are or were a "financial participant," as defined by 11 U.S.C. § 101(22A), including any contracts or agreements, including securities contracts, relevant thereto.

25. Documents sufficient to identify, refer to, or relate to any settlement payment or transfer made in connection with a securities contract that You claim provides a defense to any claim raised in the Amended Complaint.

26. All Documents evidencing, relating to, or describing the financial condition, solvency, capitalization, valuation, liabilities, or ability to timely pay debts of Pre-Spin Mallinckrodt and Post-Spin Mallinckrodt in part or in the aggregate, including financial statements, solvency reports, quality of earnings reports, audits, valuations, and fairness opinions, and any analysis related thereto.

27. All Documents evidencing, relating to, or describing the financial condition, solvency, capitalization, valuation, liabilities, or ability to timely pay debts of Pre-Spin Covidien in part or in the aggregate, including financial statements, solvency reports, quality of earnings reports, audits, valuations, and fairness opinions, and any analysis related thereto.

28. All foreign, federal, state, and local tax returns of or for Pre-Spin Mallinckrodt, Pre-Spin Covidien, and Post-Spin Covidien for the tax years 2007-2015 and 2023.

17

29.     All Communications with any investment bankers, U.S. financial institutions, foreign financial institutions, solvency or valuation advisors, or other financial advisors retained or consulted by Pre-Spin Covidien, including: (i) Duff & Phelps; (ii) Goldman Sachs; (iii) Houlihan Lokey; (iv) Central Bank of Ireland, concerning (x) the Spinoff, (y) the Opioids Business, or (z) any valuations, solvency reports, fairness opinions, appraisals, or other such reports concerning Pre-Spin Covidien or Pre-Spin Mallinckrodt.

30.     Any valuations, solvency reports, fairness opinions, appraisals, or other similar reports that identify, refer to, or relate to Pre-Spin Covidien or Pre-Spin Mallinckrodt.

31.     All Documents concerning any opinion, evaluation, rating, or score by any ratings agency or financial analyst, including Moody's Investors Service, S&P Global Ratings, and Fitch Ratings Inc., that identify, refer to, or relate to Pre-Spin Mallinckrodt, Post-Spin Mallinckrodt, Pre-Spin Covidien, Post-Spin Covidien, or the Spinoff.

32.     All Documents that identify, refer to, or relate to Pre-Spin Covidien's actual or potential Opioid-related liabilities, including actual or potential claims for compensation or liability (including claims for indemnification or contribution) that are based on, arise from, or are attributable to the Opioids Business.

33.     All Documents that constitute, refer to, or relate to Pre-Spin Covidien's management or financial projections on an annual basis, including forecasts, budgets, business plans, and annual plans.

34.     All Documents concerning MIFSA's issuance of the Spinoff Notes, including all Documents concerning the analysis, consideration, negotiation, and decision to issue the notes.

35.     All Documents concerning the transfer any proceeds of the Spinoff Notes from MIFSA to Pre-Spin Covidien or Post-Spin Covidien.

36.    All Documents relating to the Tax Matters Agreement and the tax opinion letter provided in connection with the Tax Matters Agreement, including the negotiation, execution, and implementation of the Tax Matters Agreement.

37.    All Documents relating to any contractual terms restricting Post-Spin Mallinckrodt from engaging in acquisitions, selling assets or certain subsidiaries, discontinuing business activities, reorganizing, or repurchasing or redeeming its stock for two years.

38.    All Documents concerning the allocation of some or all of the Pre-2007 Spinoff Tax Liabilities to Post-Spin Mallinckrodt, including Pre-Spin Mallinckrodt's payment of the Pre-2007 Spinoff Tax Liabilities and any payments made by Post-Spin Mallinckrodt on account of the Pre-2007 Spinoff Tax Liabilities or the Tax Matters Agreement.

39.    All Documents (including minutes and materials provided to the Pre-Spin Covidien Board) concerning the Separation Agreement, including the analysis, consideration, negotiation, and decision to enter into the Separation Agreement.

40.    All Documents (including minutes and materials provided to the Pre-Spin Covidien Board) concerning the allocation of liabilities set forth in the Separation Agreement, including the analysis, consideration, negotiation, and decisions to grant or deny the releases and indemnification provided in the Separation Agreement.

41.    All Documents relating to any claims for indemnification or reimbursement held by Post-Spin Covidien against Post-Spin Mallinckrodt or any of the Debtors pursuant to the Separation Agreement, including any requests for payments of indemnity and defenses costs in connection with, or as a result of, Opioid-related subpoenas, investigations, litigation, judgments, and settlements.

19

42.     All Documents relating to any agreements limiting MIFSA's ability to obtain loans or lines of credit from third parties other than Affiliates of Post-Spin Covidien.

43.     All Documents concerning any shared services between Pre-Spin Covidien and Pre-Spin Mallinckrodt relating to the Opioids Business, including Documents relating to any cash management systems, information technology, and shared departments such as finance, human resources, corporate compliance, communications, marketing, supply chain planning, global sourcing, accounting, customer service, and government affairs.

44.     All Documents concerning any shared services between Post-Spin Covidien and Post-Spin Mallinckrodt, including TSAs, cash management system, information technology, finance, human resources, corporate compliance, communications, marketing, supply chain planning, global sourcing, accounting, customer service, and government affairs.

45.     All Documents (including minutes and materials provided to the Pre-Spin Covidien Board) relating to any joint defense agreement (whether oral or written) between or among Post-Spin Mallinckrodt, Post-Spin Covidien, Tyco International Ltd., and Tyco Electronics Ltd, including all Documents pertaining to any analysis, consideration, negotiation, or decision to enter into any such agreement.

46.     All Documents You reviewed in connection with responding to the Interrogatories or that are referenced in Your Responses to the Interrogatories.

47.     All Documents concerning any of the affirmative defenses set forth in the Answer.

48.     Documents sufficient to identify the value of Post-Spin Covidien upon the completion of the Spinoff.

49.     All Documents that You receive in response to any subpoenas You propound in the Adversary Proceeding to any nonparty.

50.     All Documents that You intend to use, whether or not You intend to introduce such Documents into evidence, in connection with any motion, hearing, or trial in the Adversary Proceeding.

Dated: July 10, 2024
Wilmington, Delaware

**COLE SCHOTZ P.C.**

*/s/ Justin R. Alberto*

Justin R. Alberto, Esq (No. 5126)
Patrick J. Reilley, Esq. (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
preilley@coleschotz.com

Anthony De Leo, Esq.
1325 Avenue of the Americas
19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
adeleo@coleschotz.com

- and -

**CAPLIN & DRYSDALE, CHARTERED**

Kevin C. Maclay, Esq. (admitted *pro hac vice*)
Todd E. Phillips, Esq. (admitted *pro hac vice*)
Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*)
Quincy M. Crawford, III, Esq.
  (admitted *pro hac vice*)
Serafina Concannon (admitted *pro hac vice*)
One Thomas Circle, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 862-5000
Fax: (202) 429-3301
kmaclay@capdale.com
tphillips@capdale.com
jliesemer@capdale.com
mcrawford@capdale.com
sconcannon@capdale.com

*Co-Counsel to the Opioid*
*Master Disbursement Trust II*

22