**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MALLINCKRODT PLC, | ) | Case No. 20-12522 (BLS) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |
| OPIOID MASTER DISBURSEMENT TRUST II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 22-50433 (BLS) |
| | ) | |
| COVIDIEN UNLIMITED COMPANY (formerly known as Covidien Ltd. and Covidien plc), COVIDIEN GROUP HOLDINGS LTD. (formerly known as Covidien Ltd.), COVIDIEN INTERNATIONAL FINANCE S.A., COVIDIEN GROUP S.A.R.L., and DOE DEFENDANTS 1-500, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | **Re: Adv. Docket No. 201** |
| | ) | |

**MEDIATOR LAWRENCE F. STENGEL'S**
**REPORT AND RECOMMENDATION REGARDING**
<u>**DEFENDANTS' PRIVILEGE CLAIMS**</u>

This Report and Recommendation concerns a privilege dispute between Plaintiff the

Opioid Master Disbursement Trust II ("Trust") and Defendants Covidien Unlimited Co., Covidien

Group Holdings Ltd., Covidien International Finance S.A., and Covidien Group S.à r.l.'s

(collectively, "Covidien"). Covidien has withheld a set of 992 documents as subject to the

attorney-client privilege and/or work product doctrine ("Withheld Documents"). Covidien

provided the list of Withheld Documents, attached hereto as Exhibit A, on May 22, 2026. Covidien

has also redacted select documents ("Redacted Documents") based upon similar claims of

privilege and protection.  There are four lists of Redacted Documents, all of which are attached hereto as Exhibit B, which identifies 92 documents, Exhibit C, which identifies 137 documents, Exhibit D, which identifies 104 documents, and Exhibit E, which identifies one document.  In connection with a larger discovery dispute concerning the use and composition of search terms to assist Covidien in its search for and production of documents, the parties have agreed for me to review Covidien's claims of privilege and work product protection for both the Withheld Documents and the Redacted Documents.

These two sets of documents are related to the parties' dispute over the Trust's claims for fraudulent transfer, reimbursement, indemnification, and contribution, and resulting damages arising from the 2013 spinoff ("Spinoff") of Mallinckrodt plc and other debtors-in-possession in the chapter 11 cases (collectively, "Debtors" or "Mallinckrodt") from the corporate enterprise of Covidien.  The Court assigned me to mediate the dispute in its December 8, 2025, Order, and I issue this Report and Recommendation pursuant to that instruction and authority.  *See* (Adv. Dkt. No 201).

The parties have thoroughly briefed the issues, and I have conferred with them on four separate occasions.  Having fully considered the matter, I recommend the Court order Covidien to produce the documents described below.

### FACTUAL AND PROCEDURAL BACKGROUND

The Trust is a Delaware statutory trust formed under the Fourth Amended Plan of Reorganization ("Plan") of Mallinckrodt.  Under the Plan, the Trust received, among other assets, certain claims and causes of action of the Debtors, including claims and causes of action arising under chapter 5 of the Bankruptcy Code, which are defined in the Plan as Assigned Medtronic Claims. The Trust has sole authority to pursue the Assigned Medtronic Claims, and the claims and

causes of action being asserted in this proceeding are Assigned Medtronic Claims. The Trust is charged with, among other things, investigating and prosecuting the claims against Covidien for the benefit of the Debtors' creditors, which include the many victims of the nationwide opioid epidemic.

On June 15, 2014, Medtronic, Inc. entered into an agreement to acquire Covidien. On January 26, 2015, Covidien and Medtronic, Inc. became wholly owned subsidiaries of the newly formed Medtronic plc ("Medtronic") as part of a cash and stock transaction valued at approximately $50 billion.

## I.    The Bankruptcy Action

Mallinckrodt filed for bankruptcy on October 12, 2020; at the time, it had been sued in more than 3,000 opioid-related cases. Prior to confirmation of the Plan, the Official Committee of Opioid Related Claimants ("OCC") conducted due diligence of the relative strength of the Assigned Medtronic Claims. As part of this effort, in June 2021, the OCC and Medtronic agreed to 25 search terms ("OCC Terms") and 14 "ad hoc" document requests ("Ad Hoc Requests"), pursuant to which Covidien produced approximately 70,000 documents. (Adv. Dkt. No. 163 at 1-2).

On March 2, 2022, the Court confirmed the Debtors' Plan, which provided for the establishment of the Trust. The Trust was formed on June 16, 2022, when the Plan became effective. Mallinckrodt and the Trust subsequently entered into a cooperation agreement, whereby they negotiated the production of approximately 1.3 million documents based on approximately 200 search terms. The documents produced pertain to Mallinckrodt and the operation of the pharmaceuticals business. (Adv. Dkt. No. 163 at 2).

## II.    The Adversary Proceeding

On October 22, 2022, the Trust commenced the underlying Adversary Proceeding to avoid and recover alleged fraudulent transfers associated with the Spinoff, including: approximately $867 million in cash transfers; Covidien's retention of approximately $721 million in proceeds from Mallinckrodt's issuance of senior unsecured notes; Mallinckrodt's assumption of hundreds of millions of dollars of tax liability previously held by Covidien; Mallinckrodt's assumption of indemnification obligations to Covidien; and the value of the enterprise that was transferred away from the Debtors as a result of the Spinoff.

In support of these claims, the Trust alleges as follows.  By at least 2010, Covidien became aware that it was facing opioid liability that would dwarf the value of the company.  *See, e.g.,* (Adv. Dkt. No. 61 at 79, ¶ 189).  Covidien's financial advisor warned of the potential for billions in liability arising out of the pharmaceutical business and in fact other pharmaceutical companies were facing hundreds of millions of dollars in fines for the same or substantially similar conduct.  *See, e.g., id.* at 81, ¶ 193.  The DEA labeled Covidien the "kingpin" of the opioid cartel and opened an investigation into Covidien's opioid-related practices.  *See, e.g., id.* at 87, ¶ 205.

In November 2010, Covidien's board "[r]ecommended pursuing 5 strategic buyers who would not require an audit, financing and would not dig."  *Id.* at 102, ¶ 249.  "In March 2011, Covidien's board noted that it would only approve a sale to a prospective buyer if 'they assume liabilities.'"  *Id.*  "While Covidien was trying to sell Mallinckrodt and contemplated the spinoff as an alternative, Covidien extracted substantial sums of cash out of Mallinckrodt, purportedly as part of 'cash management' and funding arrangements. Covidien siphoned $867 million in a series of transfers from Mallinckrodt and did not provide reasonably equivalent value in exchange."  *Id.* at 103, ¶ 254.  "For example, (a) in fiscal year 2010, Mallinckrodt transferred a net total of $505

4

million in cash to Covidien; (b) in fiscal year 2011, Mallinckrodt transferred a net total of $258 million in cash to Covidien; and (c) in fiscal year 2012, Mallinckrodt transferred a net total of $104 million to Covidien." *Id.* The Trust also asserts a claim for reimbursement, indemnification, and contribution, which seeks to hold Covidien liable both for the costs of the Mallinckrodt bankruptcy and for the costs incurred by Mallinckrodt in defending opioid-related litigation.

Covidien moved to dismiss the Adversary Complaint, which motion the Court granted in part and denied in part.[1] The Court upheld the actual fraudulent transfer claims as sufficiently pled and allowed the claim for reimbursement, indemnification, and contribution to go forward. The Trust filed an Amended Complaint on February 8, 2024.

On July 10, 2024, prior to the start of discovery, Covidien moved for summary judgment on the securities safe harbor defense under 11 U.S.C. § 546(e). On August 20, 2025, the Court granted summary judgment on Count I as to Covidien Group S.à r.l., one of the four defendants and an indirect subsidiary of Covidien Unlimited Co., and denied Covidien's motion in all other respects.

### III.    Discovery in the Adversary Proceeding

A.  The Search Term Dispute

In June 2024, the parties exchanged their Rule 26 initial disclosures and, in July 2024, they each served a first request for production of documents. In response to the Trust's document requests, Covidien produced 24,956 documents.

On October 4, 2024, the Trust provided Covidien with a list of 224 proposed search terms, which terms yielded approximately 840,000 hits spread across 1.4 million documents. The Trust

---

[1] The Court dismissed the claims for "constructive" fraudulent transfer and breach of fiduciary duty.

then proposed a revised list of 155 terms, which resulted in 190,000 hits spread across approximately 401,000 documents ("Proposed Merits Terms").  The Trust took the position that the Proposed Merits Terms are reasonable considering its pleading has largely withstood Rule 12(b)(6) review and seeks tens of billions of dollars in alleged fraudulent transfers.  Covidien took the position that the Proposed Merits Terms are overbroad and additional document discovery is out of proportion to the needs of the case.

The parties' subsequent efforts to meet and confer regarding the search terms culminated in a discovery conference before the Court on March 24, 2025, at which conference the Court directed the parties to pursue the present mediation.

On August 20, 2025, while Covidien was producing responsive documents on a rolling basis and the parties continued to negotiate their dispute, the Trust served a set of fifteen document requests on Covidien related to damages and solvency issues ("Third Set of Requests").  To assist in responding to the Third Set of Requests, the Trust provided Covidien with a list of 16 proposed search terms, which terms yielded 36,050 hits spread across 85,055 documents ("Proposed Damages Terms").  The parties' respective positions on the Proposed Damages Terms are the same as their positions on the Proposed Merits Terms.  The parties ultimately agreed to the present mediation on December 1, 2025.  Included in the mediation is a dispute over documents which Covidien claims are privileged and otherwise subject to protection.

The mediation of the search term dispute culminated in a Report and Recommendation that the Court approved and adopted in an order issued April 22, 2026.  The Court additionally entered the Second Amended Scheduling Order extending certain pretrial deadlines and dates.  Under the current scheduling order, all discovery must be completed on or before May 31, 2027, case

dispositive motions must be filed by July 30, 2027, and a final pre-trial conference is scheduled for October 27, 2027.

B.  The Dispute Regarding the Withheld Documents

Central to this dispute is the joint-representation exception to the attorney client privilege, which exception the parties generally agree applies here.  The parties agree that the scope of the joint-representation exception as it applies here ("Exception") extends from around 2007, when Covidien was formed, to June 28, 2013, the date on which the Spinoff was finalized.  The parties also agree that the Exception applies strictly to documents related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, and opioids or similar products.[2]

Covidien originally withheld approximately 12,000 documents, which it identified in a Privilege Log produced to the Trust in December of 2024.  Covidien also produced a number of redacted documents for which it initially provided no log.

Through this mediation process, Covidien has narrowed its Privilege Log and Redaction Log to their current respective versions as reflected in Exhibits A through E.  The final document produced is found at Exhibit E  and having now reviewed all of the documents identified as subject to the dispute, the matter is ripe for decision.

**LEGAL STANDARD**

"For more than a century, common-law courts have recognized that communications between corporate clients and their attorneys are indeed privileged."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 360 (3d Cir. 2007), *as amended* (Oct. 12, 2007).  "When co-clients and their

---

[2] Covidien used a code-name for the Spinoff, "Jameson."  I treated the term "Jameson" as synonymous with the Spinoff for purposes of my evaluation of whether the Exception applies.

common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes." *Id*. at 363.

When (as in this case) "former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable." *Id*. at 366 (citing Del. R. Evid. § 502(d)(6); Restatement (Third) of the Law Governing Lawyers § 75(2)).. Documents and redactions normally subject to privilege must be turned over when, as here, (1) "the [parent] and [subsidiary] were jointly represented by the same attorneys," (2) "on a matter of common interest," "(3) "that is the subject matter of those documents." *Id*. at 386-387.

**DISCUSSION**

As discussed above, it is clear to me that the parties generally agree about the *scope* of the Exception as applied to the materials identified in the Privilege Log.   Specifically, the parties agree that the only "relevant" documents subject to the Exception are documents that relate to the pharmaceuticals business, opioids, the Spinoff, and the attempted sale of the pharmaceuticals business before Covidien decided to spin.  Consequently, the Exception does not apply to any legal communications created after the date of the Spinoff.  As Covidien did not come into existence until 2007 (as the result of a different spinoff from Tyco International Ltd.), the general timeframe to which the Exception applies is 2007 through June 28, 2013.   The potential sale or spinoff of the pharmaceuticals portion of the business was not contemplated  until sometime around 2010. Therefore, the set of documents most closely related to operation of the Exception fall within the 2010 to 2013 timeframe.

## I.      The Withheld Documents

Previously, Covidien withheld around 12,000 documents for privilege.  Through the course of this mediation, Covidien has produced all but 992 of those originally withheld documents. These documents are reflected in Exhibit A.

After careful review of these documents, I find that none of the 992 documents listed in Exhibit A fall within the Exception.  Stated another way, these documents are not related to the pharmaceuticals business, opioids, the Spinoff, or the attempted sale of the pharmaceuticals business before the Spin was completed on June 28, 2013.

## II.      The Redacted Documents

Covidien provided 333 documents with redactions for my review, which documents  are identified in Exhibits B through E.  The vast majority of the redactions are proper, as they protect from view material that is either subject to the attorney client privilege and not the Exception or material that does not relate to the pharmaceuticals business, opioids, the Spinoff, or the attempted sale of the pharmaceuticals business before the Spin was completed on June 28, 2013.  Identified below are the redactions that in my view improperly protect from view material that falls within the Exception.

The Trust has highlighted certain documents for me to pay particular attention to, and I have done so.  That being said, I recommend that the following redactions should be removed.[3]

Document beginning with Bates # COV-00159761

---

[3] Covidien provided the documents via the document platform Relativity.  Each document contains several numerical identifiers; for example, a database identifier, a privilege log identifier, and a Bates identifier.  I have chosen to reference the Bates identifier for purposes of this Report.

This document is Minutes from a Board of Director's meeting on December 1, 2010. Page 50 of the document is a slide titled "COVIDIEN Brand – Legal Update." This slide deals explicitly with the Spinoff and should not be redacted. The rest of the redactions in the document are not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

Document beginning with Bates # COV-00160130

This document is an email dated June 28, 2013, the final date of the Spinoff. The determination regarding privilege rests on whether the document came into being before or after the Spinoff was completed. Using the time frame agreed upon by the parties, in particular the notion that the timeframe is defined through June 28, 2013, I find that this document is subject to the Exception. The redactions should therefore be removed. The document discusses the Spinoff and possible effects thereof on Mallinckrodt.

Document beginning with Bates # COV-00164814

This document is titled Form 10 – Amendment No.3. It contains two redactions. The First redaction in the document is not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products. It is not subject to the Exception. However, the second redaction under "Open Items" is related to the Spinoff and it should therefore be removed.

Document beginning with Bates # COV-00164849

This document is an email dated April 18, 2023, and explicitly discusses the Spinoff. The redaction should therefore be removed.

Document beginning with Bates # COV-00245749

This document is an email thread dated November 17, 2010, which discusses Compliance Committee Notes for a Board of Directors meeting.  There are several redactions to the document.  The redaction under "Compliance Developments" is related to the pharmaceuticals business.  The information included is therefore subject to the Exception and the redaction should be removed.

The rest of the redactions in the document are not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

Document beginning with Bates # COV-00370038

This document is a PowerPoint presentation and "Ombudsman Report" dated March 15, 2011.  Page 12 discusses "Legal and Regulatory Violations" and lists 5 matters.  The entire page is redacted, but at least one ("Hazelwood, MO") and possibly two ("Mexico") redactions involve the pharmaceuticals business.  The Hazelwood, MO section of the redactions should be removed and any others that are related to pharmaceuticals should be removed as well.

Page 18 is also redacted and discusses "Financial & Business Integrity Cases."  Three of the matters, "Mexico Commercial" (2) and "Pharmaceuticals Mexico" (1) relate to the pharmaceuticals business and should be unredacted.

The rest of the redactions in the document are not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

Document beginning with Bates # COV-00377349

This document is a PowerPoint presentation titled "Compliance Developments" dated November 17, 2010.  Pages 2 and 3 contain redactions.  The redaction on page 2 should be

removed.  The entire page discusses the GlaxoSmithKline  settlement.  The redacted portion contains "Key Takeaway[s]," which, are subject to the Exception.

The rest of the redactions in the document are not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

Document beginning with Bates # COV-00377352

This document is a PowerPoint presentation entitled "Next Meeting Proposed Agenda" dated November 17, 2010.  It contains a bullet point entitled "Government investigations update." Under the bullet point, three subheadings are redacted.  The second subheading of these explicitly mentions pharmaceuticals.  This should be unredacted and turned over.

The rest of the redactions in the document are not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

Document beginning with Bates # COV-00377360

This document is a Memorandum to the Compliance Committee dated May 10, 2011, authored by John Griffin.  The document discusses Pfizer's Shareholder Derivative Settlement.  It includes legal analysis for the Board.  This is clearly privileged information.  Understandably, any large publicly traded corporation would seek legal advice on lessons learned from Pfizer's derivative shareholder settlement.  Legal advice of the sort would not normally be subject to the Exception because it is not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

However, Pfizer is primarily, if not exclusively, a pharmaceuticals company.  As such, discussion of the lessons gleaned from the derivative lawsuit is highly relevant to the

pharmaceuticals division, as well as the whole company.  I find that the redactions in this document should be removed.

Document beginning with Bates # COV-00377416

This document is a PowerPoint presentation entitled "Next Meeting Proposed Agenda" dated May 17, 2011.  It contains two bullet points entitled "Government investigations update." Under each bullet point, three subheadings are redacted.  The second subheading of each explicitly mentions pharmaceuticals.  These should be unredacted and turned over.

The rest of the redactions in the document are not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

Document beginning with Bates # MDT-038231

This document is the Agenda for the Board of Directors meeting held November 16-17, 2011.  It contains significant redactions spanning its 289 pages.

Pages 122 through 165 and 210 through253 comprise a Memorandum updating the Board of changes to the prospectus.  The EU requires companies to publish a prospectus which contains information relating to the offer of its shares.  The Memorandum informs the board of updates to this prospectus.  This information is also reflected in the SEC Form 10-K.  This prospectus reviews the requirements around issuing employee share offerings within the EU.

This document is similar in nature to a 10-K.  Just as in a 10-K, it lists risks that exist for the corporation.  On pages 130 and 218 (the prospective is duplicated in the document), there is a subheading titled "Risk factors relating to the business of Covidien" followed by numerous bullet points.  This should be unredacted.  Additionally, on pages 132 through 139 and 220 through227, the following subheading should be redacted: "2.  Risk factors related to the business of Covidien."

These sections mention DEA involvement with the company and touch on general pharmaceuticals business. The redactions on these pages should be removed as they relate to the pharmaceuticals business.

The rest of the redactions in the document are not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

Document beginning with Bates # MDT-039392

This document is the Agenda for the Board of Directors meeting held May 22-23, 2013.  It contains significant redactions over its 382 pages.   The following information should be unredacted:

- Page 61 directly deals with the Spinoff and should be unredacted. Page 63 has 3 bullet points.  The third bullet point deals directly with the Spinoff and should be unredacted. Pages 69 and 70  deal directly with the Spinoff and both should be unredacted. Page 74 references a "Pharma subpoena"; this section should be unredacted.  Page 75  deals directly with the pharmaceuticals business and should be unredacted.

The rest of the redactions in the document are not related to the Spinoff, the pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar products.

Document beginning with Bates # MDT-039924

This document is the Agenda for the Board of Directors meeting held January 17, 2013.  It contains significant redactions spanning its 461 pages.  The document includes redactions of entire pages from page 293 to page 427.  This consists of the "Directors' Report and Consolidated Financial Statements For the Year Ended September 28, 2012."  Despite explicit discussion of the

Spinoff on page 310 and mention of the pharmaceuticals division in multiple instances, Covidien

redacted the entire report.

The only justification offered on the Second Redacted Privilege Log for the redactions is:

Board Minutes/Materials memorializing legal advice regarding litigation and/or settlement updates not related to the pharmaceutical business, regarding regulatory and financial disclosure matters related to non-pharmaceutical businesses, and regarding contractual obligations.

Exhibit C.

This explanation is insufficient to support redaction of the entire report. As such, pages

293 through 427 should be unredacted.

The rest of the redactions in the document are not related to the Spinoff, the

pharmaceuticals business, the attempted sale of the pharmaceuticals business, or opioids or similar

products.

Document beginning with Bates # MDT-040628

This document is the Agenda for the Board of Directors meeting on January 19, 2012. It

contains significant redactions spanning its 204 pages. Pages 55 and 56 discuss "Significant

Differences in Irish Financial Statements relative to 2010 Irish Financial Statements." Both pages

refer to the pharmaceuticals business. As such, both pages should be unredacted.

Pages 57-81 consists of a Report presumably provided to the Board of Directors. It appears

to me that this Report was provided as part of the larger discussion of the Spin. As such, I find

that it falls within the joint privilege exception and should be unredacted.[4]

---

[4] I note this Report contains a Table of Contents that suggests that the Report consists of at least 84 pages. However, pages 2 through65 of the report are missing. The omission makes it difficult to determine whether the report is irrelevant in the larger context of the meeting discussing the Spinoff. Given the nature of the document, however, I recommend that the Report be unredacted.

## CONCLUSION

For the forgoing reasons, I recommend that the Court order Covidien to produce the documents with redactions removed as listed above.

Respectfully submitted,
SAXTON & STUMP, LLC

Dated: July 23, 2026

Hon. Lawrence F. Stengel (Ret.)
*Court Appointed Mediator*
280 Granite Run Drive, Suite 300
Lancaster, PA  17602
(717) 556-1080